131 Cal.Rptr.2d 201 (2003)
106 Cal.App.4th 763
Louis G. NAVELLIER et al. Plaintiffs and Respondents,
v.
Kenneth G. SLETTEN, Defendant and Appellant.
No. A090058.
Court of Appeal, First District, Division Four.
February 28, 2003.
Rehearing Denied March 28, 2003.
Review Denied June 11, 2003.
*203 Legal Strategies Group, Ralph C. Alldredge, Emeryville, William J. Quinn, Jr., San Francisco, for Appellant.
Law Offices of Samuel Kornhauser, Samuel Kornhauser, San Francisco, for Respondents.
*202 KAY, P.J.
This appeal arises in an action for fraud and breach of contract brought by Louis Navellier (Navellier) and Navellier Management, Inc. (NMI; collectively, plaintiffs) against Kenneth Sletten (defendant). Defendant moved to strike the complaint under the anti-SLAPP statute (Code Civ. Proc., § 425.16; hereafter § 425.16), the motion was denied, and we affirmed (Navellier v. Sletten, 2000 WL 33311962 (December 27, 2000, A090058) [nonpub. opn.]). The Supreme Court reversed and remanded with instructions to reconsider our decision in light of its opinion. (Navellier v. Sletten (2002) 29 Cal.4th 82, 96, 124 Cal. Rptr.2d 530, 52 P.3d 703.)
Ruling on an anti-SLAPP motion is "a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (Equilon Enterprises v. Consumer Cause, Inc. (2002) 29 Cal.4th 53, 67, 124 Cal. Rptr.2d 507, 52 P.3d 685.) We previously concluded that defendant's motion did not *204 satisfy the first prong of the test, and thus did not reach the second prong. The Supreme Court found that the first prong was satisfied, and has directed us to address the second prong. (Navellier v. Sletten, supra, 29 Cal.4th at pp. 95-96, 124 Cal.Rptr.2d 530, 52 P.3d 703.) We hold that plaintiffs have not established a probability of prevailing on their fraud or breach of contract claims as required by the second prong, and therefore reverse the order denying the motion to strike.

I. BACKGROUND
Defendant served as an independent trustee of a mutual fund plaintiffs established in 1993. Plaintiff NMI acted as the fund's investment adviser until defendant and the other independent trustees voted to terminate its contract in March of 1997. That decision precipitated the filing of a federal lawsuit in April 1997 by plaintiffs and others against defendant and the other independent trustees, seeking injunctive relief. In May 1997 the fund's shareholders voted against the new investment adviser selected by the independent trustees, causing the latter to negotiate for NMI's return as investment adviser. As a condition to NMI's return, plaintiffs required that the independent trustees release them from liability, and defendant and the other independent trustees executed a release of plaintiffs in July 1997. The release discharged all claims against plaintiffs other than for contribution or indemnity in the event the independent trustees were held liable to third parties.
In February 1998 plaintiffs and others filed a first amended class action complaint in the federal case, charging defendant and the other independent trustees with breach of fiduciary duty, and waste and intentional interference with prospective economic advantage. In September 1998, defendant counterclaimed against plaintiffs in the federal action seeking indemnity, and recovery for breach of contract and bad faith. Defendant's counterclaims for breach of contract and bad faith alleged that plaintiffs breached an agreement to provide him with insurance that would have covered his defense in the federal action. Plaintiffs moved for summary judgment on the breach of contract and bad faith counterclaims on the ground that they were barred by the release defendant had executed. Defendant argued that the release was unconscionable and had been given under duress. The court rejected defendant's arguments, found that the counterclaims were barred by the release, and granted plaintiffs' motion for summary judgment on the counterclaims. The case went to trial on plaintiffs' causes of action, the jury returned a defense verdict, and judgment was entered in the federal case in August 1999. The judgment against plaintiffs and dismissal of defendant's counterclaims were eventually affirmed on appeal. (Navellier v. Sletten (9th Cir. 2001) 262 F.3d 923.)
In September 1999, shortly after entry of the federal judgment, plaintiffs filed this fraud and breach of contract case, alleging that defendant misrepresented his intention to be bound by the release he executed, and that he breached the release by pursuing his federal counterclaims. Defendant interposed his anti-SLAPP motion, the merits of which are once again before us.

II. DISCUSSION

A. Plaintiffs' Burden

Since defendant has shown that plaintiffs' causes of action arose from activities  negotiation and execution of a release agreement, and pursuit of counterclaims in litigation  that were protected by the anti-SLAPP statute (Navellier v. *205 Sletten, supra, 29 Cal.4th at p. 95, 124 Cal.Rptr.2d 530, 52 P.3d 703), plaintiffs must demonstrate a probability of prevailing on their claims in order to defeat the motion to strike (§ 425.16, subd. (b)(1)); (Equilon Enterprises v. Consumer Cause, Inc., supra, 29 Cal.4th at p. 67, 124 Cal. Rptr.2d 507, 52 P.3d 685). This means that plaintiffs must "`"state[ ] and substantiate[ ] a legally sufficient claim."' [Citations.] Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.] In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant (§ 425.16, subd. (b)(2)); though the court does not weigh the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiffs attempt to establish evidentiary support for the claim." (Wilson v. Parker, Covert & Chidester (2002) 28 Cal.4th 811, 821, 123 Cal.Rptr.2d 19, 50 P.3d 733.) Thus, plaintiffs' burden as to the second prong of the anti-SLAPP test is akin to that of a party opposing a motion for summary judgment. (Kyle v. Carmon (1999) 71 Cal.App.4th 901, 907-908, 84 Cal. Rptr.2d 303.) We determine de novo whether that burden has been met. (See Paul for Council v. Hanyecz (2001) 85 Cal.App.4th 1356, 1364, 102 Cal.Rptr.2d 864, disapproved on another point in Equilon Enterprises v. Consumer Cause, Inc., supra, 29 Cal.4th at pp. 53, 68, 124 Cal. Rptr.2d 507, 52 P.3d 685).

B. Evidence Presented

Defendant's evidence in support of the motion to strike recounted the federal litigation outlined above. As of the time the motion was filed, the parties had appealed from the judgment in the federal case, but the appeal had not been decided. Plaintiffs' evidence in opposition to the motion consisted of the executed release, defendant's federal breach of contract and bad faith counterclaims, and brief excerpts from depositions in the federal suit.
In his deposition, defendant answered a series of questions about his intent in signing the release as follows: "Q. Did you intend to abide by this release when you signed it? [¶] A. If I signed it, then I don't think I  I wasn't sure if I had any choice. But I did sign it. [¶] Q. Well, I know you signed it. And my question is: Did you intend to abide by the terms of the release when you signed it? [¶] A. I don't remember any such thought. [¶] Q. Were you thinking you were not going to abide by the terms of the release when you signed it? [¶] A. I don't know what I thought at that time." Defendant indicated that he was represented by attorney Roy Adams when he signed the release.
Adams testified in his deposition that he regarded the release plaintiffs required of defendant and the other independent trustees as an unreasonable demand on plaintiffs' part. Adams said that he advised Lawrence Bianchi, one of the trustees who executed the release along with defendant, that he would be giving up claims by signing the release, "subject to possible defenses of unconscionability."

C. Summary of Analysis

Plaintiffs' claims do not have the "minimal merit" required to survive the motion to strike. (Navellier v. Sletten, supra, 29 Cal.4th at p. 95, 124 Cal.Rptr.2d 530, 52 P.3d 703.) The fraud cause of action is untenable because it is predicated on counterclaims protected by the litigation privilege. *206 Plaintiffs cannot amend their complaint at this point to assert a malicious prosecution claim that would not be barred by the privilege. Since the privilege is controlling as to the fraud cause of action, it is immaterial whether plaintiffs presented evidence sufficient to support a finding that defendant did not intend to abide by the release when he signed it. We will assume without deciding that the litigation privilege does not preclude the breach of contract cause of action. However, that cause of action fails because plaintiffs presented no evidence of damages from the breach. Entirely apart from the lack of proof, plaintiffs cannot recover damages for the legal fees and costs they incurred in connection with defendant's counterclaims because there is no statutory or contractual authorization for payment of those expenses. Nor can plaintiffs properly raise new damage theories for the first time on appeal.

D. Tort Liability

Defendant's principal argument is that he is entitled as a matter of law to judgment on plaintiffs' causes of action because they are based on counterclaims he filed in the federal action that were protected by the Civil Code section 47 privilege for publications in judicial proceedings. The litigation privilege immunizes litigants from liability for torts, other than malicious prosecution, which arise from communications in judicial proceedings. (Silberg v. Anderson (1990) 50 Cal.3d 205, 212, 215, 266 Cal.Rptr. 638, 786 P.2d 365.) The privilege generally applies to any communication by a litigant in a judicial proceeding that is made "to achieve the objects of the litigation" and has "some connection or logical relation to the action." (Id. at p. 212, 266 Cal.Rptr. 638, 786 P.2d 365.) The primary purpose of the privilege is to afford litigants "the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." (Id. at p. 213, 266 Cal.Rptr. 638, 786 P.2d 365.)
A threshold issue with respect to the privilege is whether the injury arose from "communicative acts," which are privileged, or "noncommunicative conduct," which is not. (Kimmel v. Goland (1990) 51 Cal.3d 202, 211, 271 Cal.Rptr. 191, 793 P.2d 524.) Defendant contends that because the Supreme Court found that plaintiffs' claims were "based wholly on [defendant's] protected activity" (Navellier v. Sletten, supra, 29 Cal.4th at p. 92, fn. 9, 124 Cal.Rptr.2d 530, 52 P.3d 703), any argument that the claims arose from noncommunicative conduct, rather than communicative acts, is foreclosed by the law of the case. This argument incorrectly presumes that acts falling within the anti-SLAPP statute because of their connection with judicial proceedings also inevitably fall within the litigation privilege. The privilege informs interpretation of the "arising from" prong of the anti-SLAPP statute (see Equilon Enterprises v. Consumer Cause, Inc., supra, 29 Cal.4th at pp. 64-65, 124 Cal.Rptr.2d 507, 52 P.3d 685), but protections afforded by the statute and the privilege are not entirely coextensive (compare Chavez v. Mendoza (2001) 94 Cal.App.4th 1083, 1087-1088, 114 Cal. Rptr.2d 825 [malicious prosecution action subject to motion to strike under anti-SLAPP statute]; with Silberg v. Anderson, supra, 50 Cal.3d at p. 212, 266 Cal.Rptr. 638, 786 P.2d 365 [malicious prosecution action not barred by litigation privilege]). The "protected activity" discussed by the Supreme Court majority was activity within the anti-SLAPP statute rather than the litigation privilege, and the majority did not expressly, or by necessary implication, address the privilege. Consequently, there is no law of the case we are bound to follow on that subject. *207 (See Yu v. Signet Bank/Virginia (2002) 103 Cal.App.4th 298, 309, 126 Cal.Rptr.2d 516.) We therefore proceed to consider whether plaintiffs' claims are based on privileged communicative acts.
Pleadings and process in a case are generally viewed as privileged communications. (Rubin v. Green (1993) 4 Cal.4th 1187, 1195, 17 Cal.Rptr.2d 828, 847 P.2d 1044 [complaint and subsequent pleadings in case were privileged]; Brown v. Kennard (2001) 94 Cal.App.4th 40, 49-50, 113 Cal.Rptr.2d 891 [levy on bank account pursuant to writ of execution]; O'Keefe v. Kompa (2000) 84 Cal.App.4th 130, 134-135, 100 Cal.Rptr.2d 602 [levy on bank account and filing of abstract of judgment]; Merlet v. Rizzo (1998) 64 Cal. App.4th 53, 64-66, 75 Cal.Rptr.2d 83 [motions for writ of sale and reconsideration]; California Physicians' Service v. Superior Court (1992) 9 Cal.App.4th 1321, 1330, 12 Cal.Rptr.2d 95 [defensive pleadings].) On the other hand, unprivileged noncommunicative conduct generally occurs "completely outside the judicial proceedings." (Merlet v. Rizzo, supra, at p. 65, 75 Cal.Rptr.2d 83; e.g., Pacific Gas & Electric Co. v. Bear Stearns & Co. (1990) 50 Cal.3d 1118, 1132, fn. 12, 270 Cal.Rptr. 1, 791 P.2d 587 [financing of litigation]; Kimmel v. Goland, supra, 51 Cal.3d at pp. 206-207, 210-212, 271 Cal.Rptr. 191, 793 P.2d 524 [tape recording of conversations and unlawful eavesdropping]; LiMandri v. Judkins (1997) 52 Cal.App.4th 326, 345, 60 Cal. Rptr.2d 539 [creation of security interest in settlement proceeds]; Mero v. Sadoff (1995) 31 Cal.App.4th 1466, 1479-1480, 37 Cal.Rptr.2d 769 [performance of medical exam in connection with worker's compensation claim].) However, the distinction between communicative acts and noncommunicative conduct ultimately hinges on the gravamen of the action (Rubin v. Green, supra, 4 Cal.4th at p. 1195, 17 Cal.Rptr.2d 828, 847 P.2d 1044; Pacific Gas & Electric Co. v. Bear Stearns & Co., supra, at p. 1132, fn. 12, 270 Cal.Rptr. 1, 791 P.2d 587), and exceptional situations can arise where pleadings and conduct connected with litigation are not privileged (see Yu v. Signet Bank/Virginia, supra, 103 Cal.App.4th at p. 311, 126 Cal.Rptr.2d 516 [action challenged location where suit was filed, not relief sought in the complaint]; Stacy & Witbeck, Inc. v. City and County of San Francisco (1996) 47 Cal. App.4th 1, 7-8, 54 Cal.Rptr.2d 530 [claim for payment on public works project not privileged even though claimant anticipated suing for sums claimed]).
No such exceptional circumstances are presented here. Plaintiffs seek to impose tort liability for defendant's federal counterclaims, to the extent that the counterclaims sought recovery for claims defendant had released. According to plaintiffs, some of the counterclaims defendant filed in the federal action on September 18, 1998, contravened the release. Thus, plaintiffs are challenging the content of the counterclaims  a classic example of communication  not the act, or the manner (compare Yu v. Signet Bank/Virginia, supra, 103 Cal.App.4th 298, 126 Cal. Rptr.2d 516), of their assertion. A communication in the form of a counterclaim that furthers a litigant's interest in a case is plainly "connect[ed]" to the action and made "to achieve the objects of the litigation." (Silberg v. Anderson, supra, 50 Cal.3d at p. 212, 266 Cal.Rptr. 638, 786 P.2d 365.) Therefore, we conclude that defendant's counterclaims were privileged for purposes of plaintiffs' fraud claim.
The dissent in Navellier v. Sletten, supra, 29 Cal.4th 82, 124 Cal.Rptr.2d 530, 52 P.3d 703, reasoned that "[plaintiffs'] fraud claim arose not from [defendant's] suit but from the alleged deception that occurred in July 1997, when [defendant] signed the *208 release." (Id. at p. 99, 124 Cal.Rptr.2d 530, 52 P.3d 703 (dis. opn. of Brown, J.).) While it is true that the alleged fraud occurred before the counterclaims were filed, it is also true that damages from the fraud were caused by the counterclaims' assertion. Thus, as the majority observed, "[defendant] is being sued because of the affirmative counterclaims he filed in federal court. In fact, but for the federal lawsuit and [defendant's] alleged actions taken in connection with that litigation, plaintiffs' present claims would have no basis." (Id. at p. 90, 124 Cal.Rptr.2d 530, 52 P.3d 703 (maj.opn.).) Since the fraud claim is predicated, at least in part, on privileged counterclaims and, as has been noted, the privilege bars all tort causes of action other than malicious prosecution (Pacific Gas & Electric Co. v. Bear Stearns & Co., supra, 50 Cal.3d at p. 1132, 270 Cal.Rptr. 1, 791 P.2d 587; Silberg v. Anderson, supra, 50 Cal.3d at pp. 212, 215, 266 Cal.Rptr. 638, 786 P.2d 365), plaintiffs cannot prevail on the fraud claim and the motion to strike should have been granted as to that cause of action.[1]
In their briefing to the Supreme Court, plaintiffs argued that application of the privilege would make releases "unenforceable because the releasor could simply breach the release by filing suit on the released claim and then argue that he/she was `privileged' to do so under § 47. The victim of a breach of a Release could never enforce the Release. Releases would be meaningless." However, the release in this case was not worthless; plaintiffs were able to use it to defeat counterclaims in the federal action, and thereby obtained a benefit from their bargain. Although the privilege limits tort liability for defendant's counterclaims, the privilege applies even if there are "some real injuries that go uncompensated"  "that is `"the price that is paid"'" to effectuate the policies behind the privilege. (Silberg v. Anderson, supra, 50 Cal.3d at p. 218, 266 Cal.Rptr. 638, 786 P.2d 365.)
Plaintiffs contend that they should be given leave to amend their complaint to add a cause of action for malicious prosecution, which would not be barred by the privilege, but a plaintiff cannot use an eleventh hour amendment to plead around a motion to strike under the anti-SLAPP statute. The court in Simmons v. Allstate Ins. Co. (2001) 92 Cal.App.4th 1068, 1073, 112 Cal.Rptr.2d 397, noted that "the anti-SLAPP statute makes no provision for amending the complaint once the court finds the requisite connection to First Amendment speech," and "reject[ed] the notion that such a right should be implied." The opinion explained:
"In enacting the anti-SLAPP statute, the Legislature set up a mechanism through which complaints that arise from the exercise of free speech rights `can be evaluated at an early stage of the litigation process' and resolved expeditiously. . . . [¶] Allowing a SLAPP plaintiff leave to amend the complaint once the court finds the prima facie showing has been met would completely undermine the statute by providing the pleader a ready escape from section 425.16's quick dismissal remedy. Instead of having to show a probability of success on the merits, the SLAPP plaintiff would be able to go back to the drawing board with a second opportunity *209 to disguise the vexatious nature of the suit through more artful pleading. This would trigger a second round of pleadings, a fresh motion to strike, and inevitably another request for leave to amend. [¶] . . . This would totally frustrate the Legislature's objective of providing a quick and inexpensive method of unmasking and dismissing such suits." (Simmons v. Allstate Ins. Co., supra, 92 Cal.App.4th at pp. 1073-1074, 112 Cal. Rptr.2d 397; see also Thomas v. Los Angeles Times Communications, LLC (C.D.Cal.2002) 189 F.Supp.2d 1005, 1017, fn. 11 [plaintiff cannot amend complaint after it is stricken pursuant to § 425.16, citing Simmons].)
In accordance with this persuasive reasoning, we reject plaintiffs' request for allowance of leave to amend to assert a cause of action for malicious prosecution. We note in this regard that judgment in the federal case was entered before defendant's motion to strike was filed, and that plaintiffs have consistently taken the position that the federal judgment was final, as required for a malicious prosecution claim, when it was entered, even though appeals from the judgment were pending. Thus, nothing prevented plaintiffs from timely alleging a malicious prosecution claim.

E. Breach of Contract

Defendant urges us to hold that the litigation privilege bars the breach of contract cause of action as well as the fraud claim. We decline to do so for a number of reasons.
First, the privilege is generally described as one that precludes liability in tort, not liability for breach of contract. (E.g., Rubin v. Green, supra, 4 Cal.4th at pp. 1187, 1193-1194, 17 Cal.Rptr.2d 828, 847 P.2d 1044; Kimmel v. Goland, supra, 51 Cal.3d at p. 209, 271 Cal.Rptr. 191, 793 P.2d 524; Silberg v. Anderson, supra, 50 Cal.3d at p. 212, 266 Cal.Rptr. 638, 786 P.2d 365.) In Pacific Gas & Electric Co. v. Bear Stearns & Co., supra, 50 Cal.3d 1118, 270 Cal.Rptr. 1, 791 P.2d 587, the court stated that the privilege "applies to any action except one for malicious prosecution" (id. at p. 1132, 270 Cal.Rptr. 1, 791 P.2d 587 [italics added]), but this statement was made in the context of "`derivative tort actions'" (ibid.), and it is not apparent that it referred to anything other than tort claims. Although there are cases that have applied the litigation privilege to bar breach of contract as well as tort claims (see Laborde v. Aronson (2001) 92 Cal.App.4th 459, 463-465, 112 Cal.Rptr.2d 119; Pollock v. Superior Court (1991) 229 Cal.App.3d 26, 29-30, 279 Cal.Rptr. 634), they do not discuss whether all breach of contract actions involving privileged communication are necessarily precluded.
Second, the Supreme Court majority in this case has indicated that "a defendant who in fact has validly contracted not to speak or petition has in effect `waived' the right to the anti-SLAPP statute's protection in the event he or she later breaches that contract." (Navellier v. Sletten, supra, 29 Cal.4th at p. 94, 124 Cal.Rptr.2d 530, 52 P.3d 703.) This statement is sandwiched between an observation that the second prong of the anti-SLAPP test "preserves appropriate remedies for breaches of contracts involving speech by ensuring that claims with the requisite minimal merit may proceed," and a comment that the anti-SLAPP statute does not "unduly burden plaintiffs alleging breach of an agreement not to sue." (Ibid.) Although the court was not addressing the litigation privilege, its discussion suggests that breach of contract claims like the one advanced here have potential merit.
Third, in Stacy & Witbeck, Inc. v. City and County of San Francisco, supra, 47 Cal.App.4th 1, 54 Cal.Rptr.2d 530, we refused to apply the litigation privilege to *210 bar a municipality's suit under the False Claims Act (Gov.Code, § 12650 et seq.), even though the action was based on a claim for payment under a public works project that was filed in anticipation of litigation (see Wilton v. Mountain Wood Homeowners Assn. (1993) 18 Cal.App.4th 565, 569, 22 Cal.Rptr.2d 471 [communications prior to commencement of lawsuit may be privileged]). We noted that the claim was required under the parties' contract, and thus "had a life of its own wholly apart from any judicial action," even though it "also served a litigation purpose." (Stacy & Witbeck, Inc., at pp. 6, 7, 54 Cal.Rptr.2d 530.) We continued: "The paper trail of contractual performance and course of dealing between parties under a contract cannot be immunized from use in later judicial proceedings just because that paper trail is also a publication that serves a litigation purpose. If that same paper trail amounts to wrongful performance or conduct under the contract, it escapes section 47(b). . . . [¶] . . . The litigation privilege was never meant to spin out from judicial action a party's performance and course of conduct under a contract." (Id. at pp. 8-9, 54 Cal.Rptr.2d 530.) This same reasoning could be applied to a counterclaim filed in breach of a release, and thus suggests that the privilege would not bar the breach of contract claim herein.
Fourth, defendant acknowledges that the litigation privilege might not apply if the contract were a covenant not to sue, rather than a release, because it "may frustrate the very purpose of the contract" if there were a privilege to breach the covenant. Thus, defendant himself suggests that the privilege does not categorically preclude all breach of contract actions.
Consequently, we will assume that the litigation privilege does not bar plaintiffs' breach of contract cause of action. We nevertheless conclude that this cause of action should have been stricken because plaintiffs have not substantiated any damages for the breach of contract.
In their unverified complaint, plaintiffs claimed the attorney's fees and costs they incurred litigating defendant's federal counterclaims as damages for breach of the release. Plaintiffs also alleged that they "would not have pursued the federal action in the same way" but for reliance on the release. In their argument in opposition to the motion to strike, plaintiffs explained that they were "damaged by pursuing the federal action (McLachlan case) as a class action instead of possibly asserting it as an individual action (thereby avoiding indemnity claims [defendant] is now asserting in another federal court action) in reliance on the alleged validity of the Release." In briefing to the Supreme Court, plaintiff Navellier began citing emotional distress as another element of damages for the breach of contract.
A fundamental problem with these various claims is that there is no evidence in the record of any damages from the breach of contract. Damages are, of course, a necessary element of the breach of contract cause of action (BAJI No. 10.85), and proof of that element is wholly lacking. Plaintiffs have taken the position that there was "no requirement for [them] to come forward with evidence of damages" because defendant "moved to strike solely on issues of law and did not contest or allege that there was no evidence of damages." But where, as here, the motion to strike meets the "arising from" prong of the anti-SLAPP test, the plaintiff must satisfy the second prong of the test and "establish evidentiary support for [its] claim." (Wilson v. Parker, Covert & Chidester, supra, 28 Cal.4th at p. 821, 123 Cal.Rptr.2d 19, 50 P.3d 733 (italics added); see also Simmons v. Allstate Ins. Co., *211 supra, 92 Cal.App.4th at p. 1073, 112 Cal. Rptr.2d 397 ["a SLAPP motion, like a summary judgment motion . . . requires an evidentiary showing"]; Church of Scientology v. Wollersheim (1996) 42 Cal.App.4th 628, 655, 49 Cal.Rptr.2d 620, disapproved on another point in Equilon Enterprises v. Consumer Cause, Inc., supra, 29 Cal.4th at p. 68, fn. 5, 124 Cal.Rptr.2d 507, 52 P.3d 685 [claims must be supported "by admissible evidence"].) That defendant raised legal issues in his motion did not relieve plaintiffs of their burden of presenting a sufficient "showing of facts to sustain a favorable judgment" (Wilson v. Parker, Covert & Chidester, supra, at p. 821, 123 Cal.Rptr.2d 19, 50 P.3d 733), and after plaintiffs' opposition was filed defendant could properly point to the failure to meet that burden, regardless of any other theories he may have advanced in his original moving papers.
The Supreme Court majority herein, in explaining that its decision would not "unduly burden plaintiffs alleging breach of an agreement not to sue," pointed out that such an action "presumably would involve at a minimum the pleading and proof of the alleged agreement." (Navellier v. Sletten, supra, 29 Cal.4th at p. 94, 124 Cal.Rptr.2d 530, 52 P.3d 703.) Plaintiffs did undertake that "minimum" pleading and proof with respect to the release in this case. However, the majority went on to observe that a party in plaintiffs' position would need to substantiate its claims "by appending the alleged agreement to an affidavit stating the facts upon which the defendant's liability is based" (ibid.), and plaintiffs presented no affidavit or other evidence stating facts with respect to their alleged damages.
Plaintiffs contend, citing DuPont Merck Pharmaceutical Co. v. Superior Court (2000) 78 Cal.App.4th 562, 92 Cal.Rptr.2d 755, that they should now be given an opportunity to produce the requisite evidence. However, this precedent supports defendant, not plaintiffs. The plaintiffs in DuPont were not granted leave to belatedly present evidence in opposition to an anti-SLAPP motion; they argued that they had established a probability of success because their complaint had survived a demurrer. The court rejected that argument, stating that: "It would defeat the obvious purposes of the anti-SLAPP statute if mere allegations in an unverified complaint would be sufficient to avoid an order to strike the complaint. Substantiation requires something more than that. Once the court determines the first prong of the statute has been met, a plaintiff must provide the court with sufficient evidence to permit the court to determine whether `there is a probability that the plaintiff will prevail on the claim.'" (Id. at p. 568, 92 Cal.Rptr.2d 755.) Here, plaintiffs have presented nothing as to their damages on the breach of contract cause of action beyond the bare allegations of their unverified complaint  an insufficient showing to survive the motion to strike that cause of action. (Ibid.)
While the foregoing is dispositive, there are additional problems, entirely apart from the lack of proof, with most of plaintiffs' damage theories.
Plaintiffs' major item of damages, the attorney's fees they incurred in connection with defendant's counterclaims, is not available as a matter of law because neither a statute nor the release provides for recovery of attorney's fees in this case. The issue was persuasively addressed in Olson v. Arnett (1980) 113 Cal.App.3d 59, 169 Cal.Rptr. 629, which reversed a damage award for attorney's fees expended to enforce a settlement agreement. The court wrote:
"Respondents contend that when appellant repudiated the settlement, respondents *212 were forced to continue to employ attorneys and that therefore their attorney fees logically flow as damages from the breach. [Citation.] However, to allow respondents to recover their attorney's fees would be contrary to the well-established [American] rule that in the absence of a special statute or a contractual provision for attorney's fees, the prevailing party is not entitled to recover attorney's fees from his opponent. [Citations.]
"The instant case is based on a contract, the agreement to settle the underlying action. There is no contention or evidence there was any provision in the contract for attorney's fees. Appellant breached his contract, and respondents had to employ attorneys in order to enforce that contract. We think this case is not basically different from any other contract action where the nonbreaching party is forced to employ an attorney to enforce the contract but is not entitled to his attorney's fees as damages." (Olson v. Arnett, supra, 113 Cal.App.3d at pp. 67-68, 169 Cal.Rptr. 629; accord Bunnett v. Smallwood (Colo.1990) 793 P.2d 157, 161 [since "parties who enter into a release are aware of the potential legal costs if the agreement is breached," it is "not unfair to require each party to pay its own legal costs if the parties did not find it necessary to include a fee shifting provision when they entered into the agreement"].)
Since parties are free to contract for recovery of litigation costs beyond those automatically awarded (Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co. (1996) 47 Cal.App.4th 464, 491-492, 54 Cal.Rptr.2d 888), the Olson court's reasoning applies equally to attorney's fees and costs. Olson's conclusion is consistent with the prevailing rule that such fees and costs are not recoverable in an action for breach of a release unless the agreement or a statute specifically provides for them. (Bunnett v. Smallwood, supra, 793 P.2d at p. 161 ["most jurisdictions have applied the American rule barring the award of attorney fees and costs to cases involving a breach of a release"].)
As for the emotional distress allegedly suffered by plaintiff Navellier, "damages for mental suffering and emotional distress are generally not recoverable in an action for breach of an ordinary commercial contract in California." (Erlich v. Menezes (1999) 21 Cal.4th 543, 558, 87 Cal.Rptr.2d 886, 981 P.2d 978.) Moreover, an emotional distress theory of damages is not the sort of pure issue of law that can properly be raised, as it was here, for the first time on appeal. (See Richmond v. Dart Industries, Inc. (1987) 196 Cal.App.3d 869, 879, 242 Cal.Rptr. 184.)[2]
Accordingly, plaintiffs have not demonstrated a probability of prevailing on the breach of contract cause of action.

III. DISPOSITION
The order denying the motion to strike is reversed with directions to grant the motion.
We concur: REARDON and RIVERA, JJ.
NOTES
[1] In view of this conclusion, we need not address: plaintiffs' contention that the evidence was sufficient to support a finding of fraudulent intent; defendant's argument, made for the first time in briefing after remand from the Supreme Court, that the release itself was also privileged; or defendant's contention, made for the first time at oral argument after remand from the Supreme Court, that plaintiffs failed to substantiate any damages from the alleged fraud.
[2] The same observation applies to other damage theories (alleged relinquishment of "additional lost revenue claims" in reliance on the release; defendant's alleged bad faith, sanctionable conduct) mentioned in passing for the first time in plaintiffs' appellate briefs.