Filed 9/12/13  Rivera v. Value Home Loan CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ROBERTO A. RIVERA et al., | B245890 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. YC063260) |
| v. | |
| VALUE HOME LOAN, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from orders of the Superior Court of Los Angeles County. Cary H. Nishimoto, Judge.  Affirmed in part, dismissed in part.

Law Offices of George A. Saba, and George A. Saba for Plaintiffs and Appellants, Roberto A. Rivera and Maria E. Rivera.

John Clark Brown, Jr. for Defendants and Respondents, Value Home Loan, Inc., Neil D. Gitnick, and John Clark Brown, Jr.

_____

The trial court granted a special motion to strike a "cross cross-complaint" pursuant to Code of Civil Procedure section 425.16 (§ 425.16), commonly known as the anti-Strategic Lawsuit Against Public Participation statute or anti-SLAPP statute. The court thereafter granted a motion for sanctions against the attorney who caused the cross cross-complaint to be filed. We affirm the order granting the anti-SLAPP motion. We dismiss the appeal to the extent it seeks to challenge the order imposing sanctions against counsel.

**FACTS**

*Background and the Original Complaint*

In 2005, Roberto and Maria Rivera entered into a home equity line of credit with Value Home Loan, Inc. (Value), secured by a deed of trust against real property located on 133rd Street in Gardena, and junior to a note and first deed of trust held by Bank of America. Value thereafter recorded a notice of default and subsequently initiated non-judicial foreclosure proceedings. Value claims it obtained title to the 133rd Street property in August 2010 at a trust deed foreclosure sale.

In September 2010, the Riveras (represented by attorney George Saba) filed a complaint against Value seeking to undo the foreclosure sale based on claims that the lender failed to comply with statutes governing such sales. The complaint alleged causes of action to quiet title to real property, declaratory and injunctive relief, violations of the Unfair Competition Law (Bus. & Prof., § 17200), and fraud.

In November 2010, Value obtained an unlawful detainer judgment against the Riveras. In December 2010, the clerk of the Los Angeles Superior Court issued a writ of possession of real property in favor of Value. In March 2011, the Sheriff's Department evicted the Riveras, and placed Value in possession of the 133rd Street property, and delivered a receipt for possession of real property to Value. The receipt for possession included this language: "In the event evicted individuals reenter the property in violation

2

of Penal Code § 419, present this document to the responding local law enforcement agency."

In summary, the Riveras were evicted pursuant to a writ of possession in Value's unlawful detainer action after the Riveras had filed their "wrongful foreclosure" action against Value, and while the wrongful foreclosure action was still pending.

According to evidence later presented by the Riveras, Value sold the 133rd Street property to Value Holdings LLC in May 2011.

***Value's Cross-Complaint***

In May 2012, the trial court granted Value leave to file a cross-complaint for trespass. Value's cross-complaint alleged it obtained title to the 133rd Street property by way of the trust deed foreclosure sale in August 2010, and obtained an unlawful detainer judgment against the Riveras in November 2010. Value alleged the Sheriff's Department evicted the Riveras in March 2011 pursuant to a writ of possession issued in the unlawful detainer action. Later, at some point between March 2011 and November 2011, the Riveras re-entered the 133rd Street property without Value's knowledge or consent. The Riveras remained in the property until March 2012, when the City of Gardena Police Department returned the property to Value. Value sought damages of "not less than $1,800 per month" (possibly reflecting fair rental value) for the time the Riveras occupied the property.[1]

***The Cross Cross-Complaint and the Anti-SLAPP Motion***

In July 2012, the Riveras (by attorney Saba) filed a motion for leave to file a "cross cross-complaint;" in August 2012, the trial court granted the Riveras' motion.[2]

---

[1]    As noted above, the Riveras later presented evidence demonstrating that Value's cross-complaint was potentially problematic, at least in part, in that Value no longer owned the 133rd Street property after May 2011. In short, Value's cross-complaint was seeking trespass damages (i.e., fair rental value) for a period of time – May 2011 through March 2012 – when it may not have owned the property.

[2]    The record contains a copy of a "cross cross-complaint" with a file stamp date of June 2012. Apparently, that pleading is a nullity; the parties agree that the "cross cross-

3

The cross cross-complaint named Value, its president Neil Gitnick, and its attorney of record in the wrongful foreclosure action, John Clark Brown, Jr. (hereafter, collectively Value) and alleged causes of action for breach of oral agreement, breach of the covenant of good faith and fair dealing, fraud, and intentional infliction of emotional distress.

All of the causes of action were based on the following allegations: In November and December 2011, the Riveras had re-entered the 133rd Street property "based on . . . instructions given to [them] by the holder of the first mortgage" that it, and not Value, was "the legitimate owner" of the 133rd Street property, and Value knew that the Riveras had re-entered the property. During this same time frame, Value (acting by and through its president, Gitnick, and its attorney Brown) and the Riveras were engaged in settlement negotiations to resolve the Riveras' wrongful foreclosure action. (This was before Value filed its cross-complaint for trespass.) During the course of the negotiations, Value and the Riveras "entered into several oral agreements." Value orally promised not to evict the Riveras, and the Riveras promised to hold off on the deposition of Value's "person most knowledgeable," pending a conclusion of settlement discussions and a mediation scheduled for February 2012.[3] The mediation "continued through out [*sic*] the month of February 2012." Value breached the parties' oral contract not to evict "when on March 1, 2012, [it] summoned, authorized and ordered the Gardena Police Department to evict the Riveras."

Value filed an anti-SLAPP motion to strike the Riveras' cross cross-complaint. Value's motion argued that all of the causes of action alleged in the Riveras' cross cross-complaint were based upon communications made in the course of the parties' settlement

complaint" filed in August 2012 is the operative pleading. The Code of Civil Procedure does not allow a "cross cross-complaint." (Code Civ. Proc., § 422.10 ["The pleadings allowed in civil actions are complaints, demurrers, answers, and cross-complaints"].)

[3] As noted above, the Riveras later presented evidence that Value did not own the 133rd Street property in late 2011 when it promised not to evict the Riveras until after mediation. In other words, the Riveras' cross cross-complaint alleged that Value made a promise to refrain from undertaking an action (eviction) which, by evidence later offered by the Riveras, Value had no lawful authority to undertake in any event.

negotiations in the Riveras' wrongful foreclosure action against Value. Value argued that all of the communications between the parties had been "in connection" with litigation activity that was protected by the anti-SLAPP statute. Value argued the Riveras could not prevail on any claim based upon the communications during settlement negotiations because (1) the communications were privileged under Civil Code section 47, subdivision (b), and (2) evidence of settlement negotiations is not admissible in court under Evidence Code section 1152. Value further argued that the Riveras could not prevail on their claims because the allegations of the cross cross-complaint were "demonstrably false."

On November 2, 2012, the trial court granted Value's anti-SLAPP motion, and awarded attorney fees to Value in the amount of $2,770.

On November 8, 2012, Value filed a motion for monetary sanctions pursuant to Code of Civil Procedure section 128.7 against attorney Saba. The motion argued that Saba filed a frivolous cross cross-complaint. On December 7, 2012, the trial court granted Value's motion for sanctions, and imposed sanctions in the amount of $2,590. On January 3, 2013, the court signed and entered a formal order clarifying the imposition of sanctions in the amount of $2,590 against attorney Saba.

On December 17, 2012, the Riveras filed a notice of appeal from the trial court's order of November 2, 2012, granting Value's anti-SLAPP motion, and awarding attorney fees in the amount of $2,770.

## DISCUSSION

### I. The Anti-SLAPP Motion

The Riveras contend the trial court erred in granting Value's motion to strike their cross cross-complaint pursuant to the anti-SLAPP statute. We disagree.

The anti-SLAPP statute is intended to address a concern with meritless lawsuits filed to "chill" the valid exercise of the constitutional rights, including the rights of free speech and to petition for the redress of grievances. (§ 425.16, subd. (a).) To this end, the anti-SLAPP statute authorizes a special procedure for striking such a cause of action at the earlier stages of litigation. The special striking procedure entails two steps: a court

5

first determines whether the cause of action arises from "protected activity" within the meaning of the statute, and, second, the court determines whether there is a probability that the plaintiff will prevail on the cause of action.

A cause of action presents a claim arising from so-called "protected activity" when it arises from "any act [of the defendant] in furtherance of [his or her] right of petition or free speech under the United States Constitution or California Constitution in connection with a public issue . . . ." ( § 425.16, subd. (b)(1); see, e.g., *Martinez v. Metabolife Internat., Inc*. (2003) 113 Cal.App.4th 181, 188 [it is the gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies in the first instance].) Such acts are defined in the anti-SLAPP statute to include "any written or oral statement . . . made in connection with an issue under consideration or review by a . . . judicial body. . . ." (§ 425.16, subd. (e)(2).)

When a moving defendant makes the required first-step showing that a challenged cause of action arises from protected activity, the court moves onto the second step of the anti-SLAPP statute's special striking procedure. In this step, the court must determine whether the plaintiff has demonstrated a "probability" that he or she will prevail on his or her claim. (§ 425.16, subd. (b)(1); see e.g., *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.)

We review an order granting an anti-SLAPP motion under the de novo standard of review, meaning we undertake the same two-step evaluation procedure as did the trial court. (*Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1651-1652.)

## A.    Protected Activity

The Riveras first contend the trial court's order granting Value's motion to strike their cross cross-complaint pursuant to the anti-SLAPP statue must be reversed because their cross cross-complaint does not arise from "protected activity" within the meaning of the statue.

6

The Riveras argue that the settlement negotiations upon which their cross cross-complaint is based were not "protected activity" within the meaning of the anti-SLAPP statute. In the words of their opening brief filed on appeal: "[The Riveras] respectfully suggest that the negotiations between [them] and [Value] were not conducted in contemplation of litigation, but rather was an attempt to reach a new contract. [Value]'s promise not to re-evict [the Riveras] during mediation was an independent agreement that was entered into solely to allow the parties to concentrate on resolving the underlying action at the mediation. [Value]'s promise not to evict [the Riveras] during mediation had no bearing on settling the underlying action." By their use of the language "no bearing on settling the underlying action," the Riveras apparently mean that Value's alleged promise not to re-evict them was not a term that would be included in a negotiated final settlement. The Riveras offer no case authority in support of their suggestion that settlement negotiations are not a protected activity within the meaning of the anti-SLAPP statute.

We are not persuaded. Settlement negotiations are well recognized as a protected activity within the meaning of the anti-SLAPP statute. (See *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 963-964.)

### B.       Probability of Prevailing

Next, the Riveras contend the trial court's order granting Value's motion to strike their cross cross-complaint was erroneous because there is a probability they will prevail. The Riveras argue the court erred in finding the litigation privilege (Civ. Code, § 47, subd. (b)) applied to the claims in their cross cross-complaint, precluding them from prevailing on those claims. We disagree and find the trial court appropriately ruled there is no probability the Riveras will prevail.[4]

### 1.       Analysis Under Civil Code Section 47, Subdivision (b)

---

[4]       We are at a loss to understand why the concurrence makes so much of the fact that we address the litigation privilege given that it was the primary issue raised in the briefs of both parties.

7

The Riveras argue the litigation privilege historically has been applied to provide absolute immunity from *tort* liability for "communications with 'some relation' to judicial proceedings." (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1193.) However, they recognize that the litigation privilege does not always preclude liability on a breach of contract claim. (*Wentland v. Wass* (2005) 126 Cal.App.4th 1484, 1492 (*Wentland*).) They argue the determination of whether the litigation privilege applies to an action for breach of contract "turns on whether its application furthers the policies underlying the privilege." (*Ibid.*)

In *Wentland*, the Court of Appeal determined that when the parties to an action reach a final agreement to settle, the litigation privilege afforded under Civil Code section 47, subdivision (b), does not preclude a subsequent cause of action alleging a breach of the settlement agreement. This rule is based on common sense — if the litigation privilege applied to preclude a breach of contract claim based on an alleged breach of a settlement agreement, it would frustrate the very purpose of the parties' settlement agreement. (See *Wentland, supra*, 126 Cal.App.4th at pp. 1491-1492, citing and discussing *Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 774-775.)

The Riveras argue *Wentland*'s reasoning should apply when parties in a pending action enter into an unrelated side agreement in the course of, and prior to, negotiating a final settlement agreement. The Riveras argue that, if the parties to an action make such a preliminary agreement during settlement negotiations (here, the agreement not to re-evict in exchange for delaying a deposition) before they reach a final settlement agreement, a party may pursue a cause of action for breach of an oral agreement.[5]

Before addressing the Riveras' argument as to the contract-based causes of action, we take a moment to find the litigation privilege precludes liability on their causes of action for fraud and intentional infliction of emotional distress. Tort causes of action arising from litigation are barred by the litigation privilege with the exception of post-

---

[5] Value does not discuss nor even acknowledge *Wentland* in its respondent's brief on appeal.

8

action claims for malicious prosecution. (See *Silberg v. Anderson* (1990) 50 Cal.3d 205, 215.) This result ensues even under *Wentland*, which acknowledges the long-standing rule that the litigation privilege applies to preclude tort causes of action arising from litigation.

This leaves one issue to resolve: In light of the litigation privilege, is there a probability that the Riveras can prevail on their cause of action for breach of an oral side agreement made during an attempt to settle litigation?[6] The Riveras argue they should be permitted to sue for damages caused by an alleged breach of an oral contract, which was entered into for the purpose of "allow[ing] the parties to concentrate on resolving the underlying action." Basically, the Riveras would extend the *Wentland* rule — that a party may sue for breach of a final settlement agreement without implicating the litigation privilege — to approve lawsuits on every incidental promise made during settlement negotiations, prior to reaching a final settlement agreement. The Riveras have offered an interesting argument, but we are not persuaded that their cause of action survives in light of the litigation privilege.

As noted above, *Wentland* teaches that the determination of whether the litigation privilege applies to preclude an action for breach of contract turns on whether applying the privilege "furthers the policies underlying the privilege." (*Wentland, supra*, 126 Cal.App.4th at p. 1492.) The purposes of the litigation privilege are to: ensure access to the courts free of the fear of being subject to derivative actions, promote complete and truthful testimony, encourage zealous advocacy, give finality to judgments, and avoid unending litigation. (*Ibid*.)

In our view, applying the litigation privilege to preclude the Riveras' cross cross-complaint furthers these policies. "[T]he public policy of this state is not served by

---

[6] The following discussion applies equally to the Riveras related cause of action for a contract-based breach of the covenant of good faith and fair dealing.

9

permitting attorneys to sue one another for omissions or representations made as officers of the court during the course of litigation. This policy is reflected in Civil Code section 47, subdivision (b), which recognizes a 'privilege [ ] to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.'" (*Pollock v. Superior Court* (1991) 229 Cal.App.3d 26, 29-30 (*Pollock*), quoting *Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.) As *Pollock* explains: "Attorneys have a relatively swift mechanism for redressing careless, slick, underhanded, or tacky conduct: court-imposed sanctions. Once imposed, sanctions may be reviewed by an appellate court. They may not, however, be tried de novo under the guise of a breach of contract or tort action." (*Pollock,* at p. 30.) Allowing an independent cause of action for every incidental broken promise made in the course of settlement negotiations would not avoid unending litigation. Instead, the potential for litigation would be endless. Allowing these type of actions would encourage the filing of cases arising from cases. In our view, such a situation would not give access to the courts without the fear of derivative actions.

The concurrence attempts to label the side agreement alleged here a "standstill agreement." The parties do not identify the promise made here as a "standstill agreement," nor do we. We believe that characterization is erroneous and gives too much weight to the alleged promises made in this case. The cases discussing standstill agreements generally involve agreements that halt the filing of a lawsuit or put a cause of action on hold; they generally include covenants not to sue and to toll the statute of limitations. (See. e.g., *USA Waste of California, Inc. v. City of Irwindale* (2010) 184 Cal.App.4th 53, 57; *Transwestern Pipeline Co. v. Monsanto Co*. (1996) 46 Cal.App.4th 502, 510.)

Here, there was no lawsuit to halt. The Riveras already filed a complaint and no one promised to temporarily halt all or any cause of action in the pending action. Indeed, the Riveras' cross cross-complaint did not allege that any aspect of the lawsuit was to

10

temporarily stand still.  It is important to remember there was *no pending unlawful detainer* action to put on hold at the time of the settlement negotiations; that action was separately filed and resolved well before the settlement negotiations in February 2012. The Riveras lost that lawsuit and were evicted pursuant to a writ of possession in March of 2010.

When considering the alleged promise by the Riveras was to postpone Value's deposition until after the settlement negotiations, the same result is reached.  It did not bring their action for wrongful foreclosure to a stop.  The alleged promises here amount to nothing more than mere courtesies exchanged by parties in settlement negotiations. As a result, we term the alleged agreement what it was — an incidental agreement not to re-evict.[7]

Because we have determined that the litigation privilege precludes the Riveras' cross cross-complaint, we do not address their argument that Evidence Code section 1152 would require exclusion of evidence needed to prove the claim alleged in their cross cross-complaint.

### 2. The Substantive Merits

Assuming the oral agreements alleged by the Riveras were not barred by the litigation privilege, the record supports a conclusion that the Riveras did not show a reasonable probability of prevailing.  The Riveras alleged that Value agreed not to evict pending a mediation, and that the mediation continued "throughout February of 2012." The Riveras alleged they were evicted on March 1, 2012.  There was no breach of the promise not to evict, not given the framework of the promise as alleged.

In addition, the evidence in the record in the form of letters and e-mail exchanges between Value's counsel and the Riveras' counsel do not show an enforceable agreement

---

[7]     Whether the Riveras suffered any damages beyond those already contemplated in their wrongful foreclosure action is not an issue in this appeal.

not to evict as alleged in the Riveras' cross cross-complaint. The communications show discussions about the mediation and deposition and issues concerning title to the 133rd Street property. Value's counsel submitted a declaration in support of the anti-SLAPP motion attesting that the letters and e-mails were "the only communications . . . regarding settlement . . . ." The evidence presented in opposition to the anti-SLAPP motion did not establish a prima facie showing that the Riveras would prevail on the merits at a trial.

## II.    Sanctions against Attorney Saba

Attorney Saba contends the trial court erred in imposing sanctions against him. We dismiss this aspect of the appeal.

First, attorney Saba never filed a notice of appeal from the January 3, 2013 order imposing sanctions against him. The only notice of appeal in the record is the Riveras' notice of appeal from the order of November 2, 2012, granting Value's anti-SLAPP motion. The filing of a timely notice of appeal is a jurisdictional requirement for our court to address an appeal. (*Van Beurden Ins. Services, Inc. v. Customized Worldwide Weather Ins. Agency, Inc*. (1997) 15 Cal.4th 51, 56.) If there is no timely notice of appeal filed, we must dismiss the appeal. (Cal. Rules of Court, rule 8.104(b).) Liberally construing the notice of appeal on file cannot be indulged here. We cannot reasonably construe the notice of appeal, expressly in the name of the Riveras, from the order of November 2, 2012, to include an appeal by attorney Saba, from a sanctions order entered in January 2013.

Second, an order imposing sanctions of less than $5,000 is not an independently appealable order; such an order is reviewable on appeal after entry of final judgment in the main action. (Code of Civ. Proc., § 904.1, subds. (a)(11), (a)(12), (b).) An appealable order is a jurisdictional requirement in order for our court to address an appeal. (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126.)

Finally, the order imposing sanctions against attorney Saba is not reviewable as part of the order granting Value's anti-SLAPP motion because the sanctions order was separately entered, upon a separate motion, after the entry of the order granting the anti-SLAPP motion.  (Cf. *Martin v. Inland Empire Utilities Agency* (2011) 198 Cal.App.4th 611, 631-633; *Melbostad v. Fisher* (2008) 165 Cal.App.4th 987, 990-997; *Doe v. Luster* (2006) 145 Cal.App.4th 139, 145-150.)

## DISPOSITION

The trial court's order of November 2, 2012, granting Value's anti-SLAPP motion, and awarding attorney fees in the amount of $2,770, is affirmed.  Attorney George Saba's appeal is dismissed to the extent it seeks review of the trial court's order of January 3, 2013, imposing sanctions in the amount of $2,590.  The parties are to bear their own costs on appeal.

                                                 BIGELOW, P. J.

I concur:


           FLIER, J.

13

**RUBIN, J. – Concurring:**

I agree with the majority opinion that the anti-SLAPP motion was properly granted and that the judgment should be affirmed. I also agree with the majority to the dismissal of the appeal from the imposition of sanctions. I write separately only because I do not believe the majority's discussion of the litigation privilege is necessary to our decision; nor do I believe it is a warranted extension of current law.

The majority correctly concludes that the first prong of the anti-SLAPP statute was satisfied as the Riveras' lawsuit was directed towards proceedings that had taken place during litigation, and, thus, implicated protected activity. (See *Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522.) I also agree that the Riveras did not satisfy their second prong burden to show a probability of prevailing on their claim. This failure was simply one of lack of evidentiary proof. The record reflects that the purported agreement between the parties was that Value agreed not to evict the Riveras while the parties were attempting to mediate the dispute. But the record also shows that mediation continued throughout February 2012, and the Riveras were evicted on March 1, 2012. Thus, there was no breach, and the second prong was not satisfied. The majority agrees with this. (Maj. opn. *ante*, at pp. 12-13.) I would stop there.

Rather than relying on a straightforward evidentiary analysis, the majority rests its opinion primarily on its conclusion that the litigation privilege (Civ. Code, § 47, subd. (b)) bars the Riveras' claim as a matter of law. The traditional formulation of the litigation privilege is found in *Silberg v. Anderson* (1990) 50 Cal.3d 205, 212, in which the Supreme Court for the first time stated that, although the privilege was originally thought to be directed only to defamation, it applied "to all torts except malicious prosecution." The majority expands the privilege to now apply to breaches of partial or interim settlement agreements. It does so without citing a single case in which an

1

appellate court has actually held that a breach of contract cause of action was barred by the litigation privilege.

The case that occupies most of the majority's attention on this subject is *Wentland v. Wass* (2005) 126 Cal.App.4th 1484, 1492. The majority quotes the final six words of the following passage from *Wentland* in support of its new rule that the litigation privilege applies to breach of contract actions of the type involved in the present case: "Our review of *Laborde* [*v. Aronson* (2001) 92 Cal.App.4th 459] and *Pollock* [*v. Superior Court* (1991) 229 Cal.App.3d 26], as well as other cases that have considered the litigation privilege in the context of a breach of contract case, instructs that whether the litigation privilege applies to an action for breach of contract turns on whether its application furthers the policies underlying the privilege." (*Wentland*, *supra,* at p. 1492; see maj. opn. *ante*, at p. 10.)

*Wentland*, however, did not hold that the contract in question was barred by the litigation privilege. The appellate court pointed out that the two cases, *Laborde* and *Pollock,* which the *Wentland* court cited in the above passage applied the rule in extremely narrow circumstances. First of all *Laborde* has been disapproved, albeit on other grounds. (*Musaelian v. Adams* (2009) 45 Cal.4th 512, 520 [attorney who responds in pro se to a filing abuse may not recover attorney fees as sanctions].) More fundamentally, although the complaint in *Laborde* included a breach of contract cause of action, the opinion contains no discussion of the applicability of the litigation privilege to contract actions. The appellate court instead first held that summary judgment was properly granted in favor of a psychologist who gave testimony unfavorable to the plaintiff in a family law proceeding, a holding which, coincidentally, mirrors the Supreme Court's decision in *Silberg v. Anderson, supra.* The rest of the opinion deals with sanctions against an attorney.

The second case discussed in *Wentland, Pollock v. Superior Court, supra,*

2

229 Cal.App.3d 26, also had its genesis in sanctions imposed on counsel. The parties were two lawyers who had previously represented opposing clients in an underlying lawsuit that had settled. In the new lawsuit, the plaintiff lawyer sought damages against the defendant lawyer because the latter had failed to advise the court that the underlying litigation had settled. For this omission, the original court imposed monetary sanctions against the plaintiff which was the amount of damages plaintiff sought to recover in the new lawsuit. Although there was a breach of contract cause of action, the court rested its decision on the reality of what the plaintiff was trying to accomplish in its new lawsuit. He was attacking the sanctions order. "If plaintiff has no quarrel with the sanctions order, he should pay up and be done with it. If, as he has inconsistently alleged, the sanctions order was 'imposed wrongfully and ignorantly by the [Los Angeles] court' because the defendants breached an agreement or acted tortiously, his remedy was to seek reconsideration (Code Civ. Proc., § 1008) or to appeal. (Code Civ. Proc., § 904.1; see *I. J. Weinrot & Son, Inc. v. Jackson* (1985) 40 Cal.3d 327, 331 [220 Cal.Rptr. 103, 708 P.2d 682].)" (*Pollock, supra,* 229 Cal.App.3d at p. 29.) The court described plaintiff's position as "hokum." (*Ibid.*) "Simply put, the public policy of this state is not served by permitting attorneys to sue one another for omissions or representations made as officers of the court during the course of litigation. . . . [¶] Attorneys have a relatively swift mechanism for redressing careless, slick, underhanded, or tacky conduct: court-imposed sanctions. Once imposed, sanctions may be reviewed by an appellate court. They may not, however, be tried de novo under the guise of a breach of contract or tort action." (*Id.* at pp. 29-30.) *Pollock,* I suggest, is better understood as holding that an agreement between two lawyers to advise the court of a settlement does not rise to the level of an enforceable contract.

Nothing in *Pollock* remotely resembles the facts of this case: there was no charge of slick lawyering here, for sanctions nor misleading the court about a settlement.

*Laborde* and *Pollock* are the only cases discussed in *Wentland* that remotely deal with the question of the application of the litigation privilege to contract causes of action.

3

They deal with actions founded on testimony given in court proceedings and with sanctions against an attorney. They do not deal with agreements made between contracting parties who happen to be involved in litigation. The agreement here has nothing to do with who testified to what and it has nothing to do with sanctions against opposing counsel. Rather, the agreement here is fairly similar to the agreement in *Wentland* that the appellate court held was not barred by the litigation privilege. Both cases involve the breach of a partial settlement agreement.

In *Wentland,* the parties had earlier reached an agreement regarding one of several partnerships involved in litigation. Later, a cross-complaint was filed that allegedly contained statements that constituted a breach of the original agreement. The trial court sustained a demurrer on the ground that a breach of the agreement was barred by the litigation privilege. The Court of Appeal reversed, concluding that cross-complainants could continue with the claim that the other party had breached its partial settlement agreement.

The alleged agreement reached between the parties here may carry a little less weight than the settlement in *Wentland*. This agreement could be called a standstill agreement in which parties agree to put litigation aside for some period of time while there is an effort to accomplish something that might benefit both sides, such as the termination of litigation, mitigation of damages or otherwise narrow the litigation. The majority does not approve of the use of term "standstill agreement" (maj. opn. *ante*, at p. 11), preferring instead "side agreement." Either way it is an agreement between the parties. It does not purport to resolve the order of discovery, or the scheduling of a motion. This is not the type of conduct that the court in *Pollock* described: careless, slick, underhanded or tacky conduct by opposing counsel. I agree that the type of conduct present in *Pollock* is handled properly and routinely by a sanctions motion. But this is not such a case. The parties allegedly entered into a simple contract, with fairly simple terms but bargained for consideration. Here, there was nothing the trial court could do within the confines of the litigation to avoid damages for break of contract.

4

Although the majority suggests that this dissent would extend the *Wentland* rule (maj. opn *ante*, at p. 9), it is the majority that has created a new rule of law that certain partial settlement agreements are worthy of enforcement and others are not. The determination of worthiness is made by the tool of the litigation privilege. I respectfully disagree.

Consistent with *Wentland's* holding that the litigation privilege was inapplicable is *Navellier v. Sletten* (2003) 106 Cal.App.4th 763 (*Navellier II*), a case which the majority cites but does not discuss. *Navellier II* followed an earlier Supreme Court opinion in the same case (*Navellier v. Sletten* (2002) 29 Cal.4th 82 (*Navellier I*).) In *Navellier II* the issue was whether the plaintiff had showed a probability of prevailing on the merits of its breach of contract claim, which was based on the defendant having filed counter claims against the plaintiff in alleged breach of a release of liability. The *Navellier II* court assumed that the litigation privilege did not bar the plaintiff's action for breach of a contract not to sue, although it eventually found the claim failed for lack of damages. (*Id*. at pp. 773-774.) Its analysis as to the nonapplicability of the litigation privilege was twofold:

First, it relied on a series of Supreme Court cases that, according to *Navellier II*, describe the litigation privilege "as one that precludes liability in tort, not liability for breach of contract. (E.g., *Rubin v. Green* [1993] 4 Cal.4th 1187, 1193-1194; *Kimmel v. Goland* [1990] 51 Cal.3d at p. 209; *Silberg v. Anderson* [1990] 50 Cal.3d at p. 212.)" (*Navallier II, supra,* 106 Cal.App.4th at p. 773.)

Second, it found support in the following statement by the Supreme Court in *Navellier I, supra*, 29 Cal.4th at page 94: "a defendant who in fact has validly contracted not to speak or petition has in effect 'waived' the right to the anti-SLAPP statute's protection in the event he or she later breaches that contract." The *Navellier II* court

5

reasoned that applying the litigation privilege to an agreement not to sue would frustrate the very purpose of the contract. (*Navellier II, supra,* 106 Cal.App.4th at p. 774.)[1]

In sum, this case does not require an analysis of the litigation privilege because there are narrower grounds for deciding this appeal. (See *Witkin, Cal. Procedure* (5th ed. 2008) Appeal, § 342, p. 392.) To the extent the privilege is considered, I conclude it is not applicable here.

RUBIN, J.

---

[1] Several other cases have concluded that the litigation privilege does not apply to breach of contract causes of action. (See *Stacy & Witbeck, Inc. v. City and County of San Francisco* (1996) 47 Cal.App.4th 1, 6-8 [litigation privilege did not apply to False Claims Act claim which contained contract elements]; *ITT Telecom Products Corp. v. Dooley* (1989) 214 Cal.App.3d 307, 319-320 [privilege barred tort but not contract claims for breach of confidentiality agreement during litigation].)