Filed 10/19/18; Certified for publication 11/13/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

LLOYD COPENBARGER, as Trustee, etc.,

    Plaintiff and Respondent,

      v.

MORRIS CERULLO WORLD EVANGELISM, INC.

    Defendant and Appellant.

G054731

(Super. Ct. No. 30-2012-00605730-CU-BC-CJC)

O P I N I O N

Appeal from a judgment of the Superior Court of Orange County, Deborah C. Servino, Judge.  Reversed and remanded.

Galuppo & Blake, Louis A. Galuppo, Steven W. Blake, Andrew E. Hall and Daniel T. Watts for Defendant and Appellant.

HamptonHolley, George L. Hampton IV, Colin C. Holley and Laura J. Petrie for Plaintiff and Respondent.

\*      \*      \*

**INTRODUCTION**

Lloyd Copenbarger, as Trustee of the Hazel I. Maag Trust (the Maag Trust), sued Morris Cerullo World Evangelism, Inc. (MCWE) for declaratory relief and breach of a settlement agreement made to resolve various disputes, including an unlawful detainer action.[1] The Maag Trust alleged MCWE breached the settlement agreement by failing to dismiss with prejudice the unlawful detainer action and sought, as damages, attorney fees incurred in that action from the date of the settlement agreement to the date on which MCWE did dismiss the action.

Following a bench trial, the trial court found MCWE had breached the settlement agreement by not timely dismissing with prejudice the unlawful detainer action. As damages, the court awarded the Maag Trust $118,000—representing the attorney fees it claimed to have incurred during the relevant time period.

On appeal, MCWE does not challenge the finding that its failure to dismiss the unlawful detainer action constituted a breach of the settlement agreement. Instead, MCWE makes a number of arguments challenging the damages awarded. Most significantly, MCWE argues (1) the Maag Trust could not as a matter of law recover its attorney fees incurred in the unlawful detainer action as damages for breach of the settlement agreement because attorney fees are costs of suit, and (2) the Maag Trust failed to present competent evidence sufficient to prove the amount of damages.

---

[1] This is the fifth appeal arising out of a sublease between MCWE as sublessor and Newport Harbor Offices & Marina, LLC (NHOM) as sublessee of real property in Newport Beach, and related agreements, business dealings, and disputes. The other four were *Newport Harbor Offices & Marina, LLC v. Morris Cerullo World Evangelism* (2018) 23 Cal.App.5th 28; *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2016) 6 Cal.App.5th 1207, affirmed (2018) 4 Cal.5th 637; *Newport Harbor Offices & Marina, LLC v. Morris Cerullo World Evangelism* (Feb. 3, 2016, G050243) [nonpub. opn.]; and *Copenbarger v. Morris Cerullo World Evangelism* (2013) 215 Cal.App.4th 1237.

It appears to us the Maag Trust could recover, as damages for breach of the settlement agreement, its attorney fees incurred in the unlawful detainer action. One purpose for the Maag Trust entering into the settlement agreement was to avoid continuing to run up attorney fees in the unlawful detainer action; had MCWE performed its obligations under the settlement agreement by dismissing the action, the Maag Trust would not have incurred those fees.

We reverse the judgment against MCWE, however, because there was a wholesale failure of proof of the amount of damages on the part of the Maag Trust. At trial, the Maag Trust did not attempt to authenticate as business records its attorney invoices and admit them into evidence. Nor did the Maag Trust present testimony from its attorneys, or anyone else, of billing rates and the work performed in the unlawful detainer action. The Maag Trust offered only the testimony of Lloyd Copenbarger, whose testimony about the invoices was hearsay and violated the secondary evidence rule, and who testified he did not know what the Maag Trust's attorneys did in the unlawful detainer action. As the evidence was insufficient to support the judgment, we reverse with directions to enter judgment in favor of MCWE on the Maag Trust's complaint.

## FACTS

MCWE is the lessee of a 50-year ground lease (the Ground Lease) of real property (the Property) in Newport Beach. The Property was improved with an office building and marina (the Improvements). The Ground Lease terminates on December 1, 2018.

In 2004, MCWE subleased the Property and sold all of the Improvements to NHOM (the Sublease). The Sublease terminates on November 18, 2018. Paul Copenbarger and Kent McNaughton were the members and managers of NHOM.

To acquire the Sublease and fund the purchase of the Improvements, NHOM obtained a $1.15 million loan from Plaza del Sol Real Estate Trust (Plaza del Sol)

3

and a $3 million loan from the Maag Trust.  Lloyd Copenbarger, who is Paul Copenbarger's brother, is the trustee of the Maag Trust.  The $3 million loan from the Maag Trust was evidenced by a promissory note (the Maag Note) and secured by a first priority deed of trust on the Sublease and the Improvements (the Maag Deed of Trust).  The $1.15 million loan from Plaza del Sol was evidenced by a promissory note (the Plaza del Sol Note) and secured by a second priority deed of trust on the Sublease and the Improvements (the Plaza del Sol Deed of Trust).

Starting in 2009, NHOM experienced cash flow problems due to "a shortage of rents."  In July 2009, Paul Copenbarger described NHOM's cash flow as "rather grim."  Necessary maintenance and repairs were not made, and NHOM's property manager began notifying NHOM of deferred maintenance issues at the Property.  In late August 2009, the Maag Trust notified NHOM of defaults of NHOM's obligations under the Maag Note, including failure to maintain the Property and to make timely loan payments.

In 2010, the Maag Trust offered to make NHOM's note payments to Plaza del Sol if MCWE agreed to forbear from declaring a default of the Sublease for one year.  MCWE agreed.  In April 2010, Cerullo, Plaza del Sol, and the Maag Trust entered into an "Agreement re: Assignment and Transfer of Promissory Note and Deed of Trust and Ground Lease Enforcement" (the Agreement Re: Assignment).  Under the terms of the Agreement Re: Assignment, the Maag Trust agreed to make certain payments on the Plaza del Sol Note, reimburse Plaza del Sol for real property taxes it paid on the Improvements and the Property, and make future payments to Plaza del Sol in an amount equal to payments due on the Plaza del Sol Note as such payments became due.  MCWE and Plaza del Sol agreed not to declare a default under the Sublease on account of then-existing defaults so long as the Maag Trust made the agreed-upon payments.

In June 2011, MCWE commenced an unlawful detainer action against NHOM, Orange County Superior Court Case No. 30-2011-00485656 (the UD Action),

4

based on allegations NHOM failed to maintain and undertake required repairs to the Improvements. Six months later, the Maag Trust intervened in the UD Action as a party defendant under the theory that if NHOM were evicted and the Sublease terminated, then the Maag Trust's security interest created by the Maag Deed of Trust would be destroyed.

In August 2012, MCWE, Plaza del Sol, and the Maag Trust entered into a settlement agreement (the Settlement Agreement). The Settlement Agreement "rescind[ed] and cancel[ed] the Agreement Re: Assignment," required the Maag Trust to pay $400,000 (split into two payments) to MCWE, and obligated Plaza del Sol to assign the Plaza del Sol Note and the Plaza del Sol Deed of Trust to the Maag Trust. The Settlement Agreement states each party would bear its own costs and attorney fees, but that "[i]n any dispute involving the enforcement of this [Settlement] AGREEMENT, the prevailing party shall be entitled to recover . . . its reasonable attorneys' fees and all other reasonable costs and expenses incurred therein."

The Settlement Agreement states MCWE "[w]ill, and hereby does, dismiss the UD [Action] with prejudice." Lloyd Copenbarger wanted to end the litigation and stop paying attorney fees in the UD Action. Although the Settlement Agreement was signed in August 2012, and required a dismissal with prejudice, MCWE did not dismiss the UD Action until October 2015, and then did so without prejudice.

## PROCEDURAL HISTORY

In October 2012, counsel for MCWE sent a letter to the Maag Trust purporting to rescind the Settlement Agreement. Two weeks later, the Maag Trust filed a complaint against MCWE and Plaza del Sol for declaratory relief and breach of contract.[2] The complaint alleged MCWE and Plaza del Sol breached the Settlement Agreement by failing to dismiss the UD Action and by not delivering the Plaza del Sol Note and Plaza

---

[2] The Maag Trust later filed an amended complaint adding causes of action for declaratory relief and breach of contract based on the Agreement re: Assignment. The Maag Trust dismissed those causes of action before trial.

5

del Sol Deed of Trust to the Maag Trust. As damages for breach of contract, the Maag Trust alleged it "suffered damages in an amount in excess of the jurisdiction of this court in an amount subject to proof in that: a) its title to and security interest in the P[roperty] has been and continues to be damaged, clouded and disparaged, and b) it has not received the [Plaza del Sol Note], the [Plaza del Sol Deed of Trust] or the Three Hundred Thousand Dollars ($300,000.00) note for which it has already paid a sum in excess of Three Hundred Thousand Dollars ($300,000.00) as well as other goods and valuable consideration."

MCWE and Plaza del Sol filed a cross-complaint for rescission of the Settlement Agreement. However, in 2015, MCWE and Plaza del Sol changed course and amended their cross-complaint to assert reformation and specific performance. Only then did MCWE dismiss the UD Action, without prejudice.

A bench trial was conducted over four days in May 2016. The trial court granted MCWE's motion in limine to exclude evidence and argument that MCWE breached the Settlement Agreement by failing to turn over the Plaza del Sol Note and the Plaza del Sol Deed of Trust. The Maag Trust's only theory of damages presented at trial was that it incurred $118,000 in attorney fees defending the UD Action between August 2012, when the Settlement Agreement was executed, and November 2015, when MCWE dismissed the UD Action. In support of this theory of damages, Lloyd Copenbarger testified he had received invoices from his attorney in the amount of $118,000. The trial court overruled MCWE's objections to that testimony based on hearsay and the secondary evidence rule. Lloyd Copenbarger testified he had the invoices, but did not bring them to court and had never reviewed them. Lloyd Copenbarger claims he had paid about $90,000 toward the invoices out of his own pocket.

The trial court ruled in favor of the Maag Trust and against MCWE and Plaza del Sol on the declaratory relief and breach of contract causes of action and awarded the Maag Trust $118,000 in damages. Plaza del Sol moved to correct the

6

judgment or for a new trial on the ground there was no evidence it had done anything to breach the Settlement Agreement. The court granted the motion, vacated the previously entered judgment, and entered a new judgment and statement of decision in January 2017.

The new judgment awarded the Maag Trust $118,000 in damages against MCWE only, awarded judgment in favor of Plaza del Sol on the Maag Trust's first amended complaint, and awarded judgment in favor of the Maag Trust and against MCWE and Plaza del Sol on the cross-complaint.

In the statement of decision, the trial court found the Settlement Agreement was "valid, binding, and of full force and effect" and rejected MCWE's claim for its reformation. The court found MCWE materially breached the Settlement Agreement by "not promptly dismissing with prejudice the UD [Action]" and this breach excused further performance by the Maag Trust. The court concluded the Maag Trust could recover the attorney fees incurred in the UD Action as damages for breach of the Settlement Agreement: "The entire purpose of the Settlement Agreement was to halt litigation in the UD [A]ction. Specifically, MCWE agreed to promptly dismiss with prejudice the UD [A]ction. Accordingly, the natural consequence of breaching this particular provision of the Settlement Agreement was the Maag Trust incurring additional attorney fees and costs of litigation in the UD [A]ction."

As for the amount of the Maag Trust's damages, the court found: "The only evidence [the] Maag Trust presented as damages from MCWE's breach of the Settlement Agreement was Lloyd Copenbarger's testimony that the Maag Trust incurred $118,000 in attorney's fees in the UD [Action] between August 2012 and October 2015 (when the UD [Action] was dismissed). Maag Trust has not shown any other damages." The court also found that "even without corroborating attorney bills, Lloyd Copenbarger's testimony is credible."

7

In addition, the trial court, on its own initiative, took judicial notice of documents filed in the UD Action from September 2012 until the UD Action was consolidated with this litigation in April 2013. The court found: "Litigation activity, including ones before an appointed referee, occurred in the action between August 2012 and April 10, 2013. The jury trial on the UD [A]ction was stayed on April 19, 2013. [¶] The Court also notes activity within this matter after the UD [A]ction was consolidated. . . . The stay was lifted approximately six months later on October 25, 2013. With the exception of settlement activities, the matter was also stayed from May 20, 2014 to January 20, 2015 while the parties discussed settlement of both the UD [A]ction and this action as consolidated. When the matter was not stayed, some litigation activity in the UD [Action] occurred between October 25, 2013 and October 7, 2015, such as opposing a motion for relief from the court's order dismissing the UD [A]ction and continued settlement activities. The court determines that Maag Trust is entitled to $118,000 as damages from MCWE's breach of the Settlement Agreement."

MCWE timely filed a notice of appeal from the judgment entered in January 2017. Plaza del Sol is not a party to this appeal. The Maag Trust did not appeal from the judgment in favor of Plaza del Sol on the Maag Trust's complaint, and Plaza del Sol did not appeal from the judgment on its cross-complaint.

## DISCUSSION

## I.

### Whether the Maag Trust Could Recover Attorney Fees Incurred in the UD Action as Damages for Breach of the Settlement Agreement.

The Maag Trust's theory of damages was MCWE's refusal to dismiss the UD Action, as required by the Settlement Agreement, resulted in the Maag Trust incurring attorney fees of $118,000 in defending the UD Action from the date the Settlement Agreement was signed to the date the UD Action was dismissed. MCWE

8

argues the Maag Trust could not, as a matter of law, recover attorney fees incurred in the UD Action as damages for breach of the Settlement Agreement. Such attorney fees, according to MCWE, are costs of suit, not damages, and may only be recovered by posttrial motion.

An element of a breach of contract cause of action is damages proximately caused by the defendant's breach. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.) The statutory measure of damages for breach of contract is "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." (Civ. Code, § 3300.) "Contract damages seek to approximate the agreed-upon performance. '[I]n the law of contracts the theory is that the party injured by breach should receive as nearly as possible the equivalent of the benefits of performance.'" (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 515.)

Detriment caused by MCWE's breach of the Settlement Agreement would include the attorney fees incurred by the Maag Trust in defending the UD Action. A benefit, and intended goal, of the Settlement Agreement was for the Maag Trust to avoid incurring more attorney fees in the UD Action—hence, the Settlement Agreement required immediate dismissal with prejudice of the UD Action. Had MCWE dismissed the UD Action with prejudice as required by the Settlement Agreement, the Maag Trust would not have incurred attorney fees defending the UD Action from the date on which the Settlement Agreement was signed to the date on which MCWE dismissed the UD Action. Thus, the Maag Trust's attorney fees incurred in the UD Action within that time frame fall within the scope of statutory breach of contract damages.

As MCWE emphasizes, California follows the American rule, under which each party to a lawsuit ordinarily must pay his or her own attorney fees incurred in that lawsuit. (*Trope v. Katz* (1995) 11 Cal.4th 274, 278; *Gray v. Don Miller & Associates,*

9

*Inc.* (1984) 35 Cal.3d 498, 504.) Code of Civil Procedure section 1021 codifies this rule, providing that the measure and mode of attorney compensation are left to the agreement of the parties "[e]xcept as attorney's fees are specifically provided for by statute."

There is a difference, however, between attorney fees sought *qua* damages and attorney fees sought *qua* costs of suit. In *Brandt v. Superior Court* (1985) 37 Cal.3d 813, 819, the California Supreme Court recognized, in a tort action for wrongful denial of insurance policy benefits, the insured may recover as tort damages the attorney fees incurred to obtain the policy benefits wrongly denied. *Brandt* fees are damages, not costs. (*Essex Ins. Co. v. Five Star Dye House, Inc.* (2006) 38 Cal.4th 1252, 1258.)

Although *Brandt* dealt with a tort cause of action, the principle that attorney fees *qua* damages are recoverable as damages, and not as costs of suit, applies equally to breach of contract. In this case, for example, the Maag Trust's attorney fees incurred in defending the UD Action are damages caused by MCWE's breach of the Settlement Agreement. Those attorney fees were not costs of suit because they were not costs incurred in the action to enforce the Settlement Agreement. In contrast, the Maag Trust's attorney fees incurred in the lawsuit for breach of the Settlement Agreement would be, if recoverable, costs of suit because they were incurred in the litigation in which they were sought. (Code Civ. Proc., § 1033.5, subd. (a)(10).)

MCWE relies on two Court of Appeal opinions in support of the argument that attorney fees may never be recovered as damages for breach of contract. In *v. Arnett* (1980) 113 Cal.App.3d 59, 63, the plaintiff sued the defendants for personal injuries. Just before trial, the parties settled, but the plaintiff repudiated the settlement agreement. The defendants filed a cross-complaint to enforce the settlement agreement and sought as damages attorney fees incurred in having to continue defending the personal injury lawsuit. (*Ibid.*) A jury awarded the defendants damages for breach of the settlement agreement. (*Id.* at p. 64.) The Court of Appeal reversed because "to allow [the defendants] to recover their attorney fees would be contrary to the well-established rule

10

that in the absence of a special statute or a contractual provision for attorney's fees, the prevailing party is not entitled to recover attorney's fees from his opponent." (*Id.* at p. 67.)

*Navellier v. Sletten* (2003) 106 Cal.App.4th 763 (*Navellier*) arose out of the breach of a release agreement. The plaintiffs sued defendant for fraud and breach of contract. (*Id.* at p. 766.) In the breach of contract cause of action, the plaintiffs alleged the defendant breached the release agreement by pursuing counterclaims in a federal lawsuit. (*Id.* at pp. 767-768.) The trial court denied the defendant's special motion to strike under the anti-SLAPP statute. (*Id.* at p. 766.) The Court of Appeal reversed. The second prong of the anti-SLAPP analysis requires a plaintiff to demonstrate a probability of prevailing on its claim. (*Id.* at p. 768.) The Court of Appeal concluded the plaintiffs could not meet this burden on the breach of contract cause of action because the "Plaintiffs' major item of damages, the attorney's fees they incurred in connection with defendant's counterclaims, is not available as a matter of law because neither a statute nor a release provides for recovery of attorney's fees in this case." (*Id.* at p. 776.)

We question whether *Olson* and *Navellier* were correctly decided because both opinions fail to recognize the difference between attorney fees sought as damages and attorney fees sought as costs of suit.[3] We are not bound by those opinions. (*Sarti v.*

---

[3] Both the *Navellier* and *Olson* opinions mention the lack of an attorney fees provision in the contracts. (*Navellier, supra*, 106 Cal.App.4th at p. 776 ["neither a statute nor the release provides for recovery of attorney's fees in this case"]; *Olson, supra,* 113 Cal.App.3d at pp. 67-68 ["There is no contention or evidence there was any provision in the contract for attorney fees"].) Here, the Settlement Agreement does provide for prevailing party attorney fees. MCWE contends the attorney fees provision in the Settlement Agreement permits recovery only by the prevailing party in an action to enforce or for breach of the Settlement Agreement and, therefore, would not permit recovery of attorney fees in the UD Action. But that contention serves to emphasize the point that attorney fees incurred in the UD Action are not costs of this lawsuit but damages for breach of the Settlement Agreement.

11

*Salt Creek Ltd.* (2008) 167 Cal.App.4th 1187, 1193 ["there is no horizontal stare decisis in the California Court of Appeal"].)

Although it appears to us attorney fees may be recovered as damages for breach of contract, we do not need to decide the issue.  Nor do we need to decide whether, as MCWE contends, the Maag Trust had to plead attorney fees as special damages in its complaint, whether the Maag Trust failed to disclose those damages in discovery, or whether the Maag Trust had to plead and prove excuse of its own failure to perform its obligations under the Settlement Agreement.  Nor do we need to decide the offset issue.  If attorney fees were recoverable as damages for breach of the Settlement Agreement, the Maag Trust failed to prove them.

**II.**

**The Maag Trust Failed to Prove Damages for Breach of
the Settlement Agreement.**

"No damages can be recovered for breach of contract which are not clearly ascertainable in both their nature and origin."  (Civ. Code, § 3301.)  "'Damages which are remote, contingent, or merely possible cannot serve as a legal basis for recovery.'" (*Westside Center Associates v. Safeway Stores 23, Inc.* (1996) 42 Cal.App.4th 507, 531.) The plaintiff in a breach of contract action has the burden of proving nonspeculative damages with reasonable certainty.  (*Richman v. Hartley* (2014) 224 Cal.App.4th 1182, 1186; *Munoz v. MacMillan* (2011) 195 Cal.App.4th 648, 662.)

The Maag Trust's proof of its damages came solely from the testimony of Lloyd Copenbarger.  He testified he had received invoices from the attorneys who represented the Maag Trust in the UD Action.  He testified the invoices included services of counsel representing the Maag Trust in the lawsuit for breach of the Settlement Agreement.

Lloyd Copenbarger was asked, based on his review of the invoices, how much the Maag Trust paid in attorney fees.  MCWE objected on grounds of the

12

secondary evidence rule and hearsay. The court overruled the objections, and Lloyd testified, "approximately $118,000." When asked on cross-examination if he had written checks for the $118,000, he answered he had not, he thought he had paid about $90,000, and he was not sure "what portion went to what portion." He testified the $118,000 "represents the unlawful detainer fees that were paid that had to be incurred because [MCWE] didn't dismiss the [UD A]ction."

Lloyd Copenbarger testified he had copies of the invoices for the attorney fees, but did not bring the invoices with him to trial and had "nothing here today in regard to those fees." When asked what work was done for the $118,000 in attorney fees, he answered, "I don't know the specific actions. I just . . . know the billing statement information that I was given by . . . my attorney." Asked if he had reviewed the invoices before testifying at trial, he answered: "I didn't review the billings period. There are no funds with which to pay those attorneys at this time, . . . and—I'm not disputing any of their bills, and so I didn't review them."

Lloyd Copenbarger was also asked what services he received from his attorneys in the UD Action. He answered: "I don't know. The attorneys were doing what they had to do involved in the case. Whether they had to do nothing or whether they were involved in substantial actions, I don't know. . . . The record will show, and that will be something for [attorney] Hampton and whoever would have that information. I don't recall participating in anything. Maybe I signed some papers, but I was not involved—physically or personally involved to any degree in any of this litigation, except for depositions where I was being deposed."

Lloyd Copenbarger testified he had no independent recollection of what work was performed or the specific dollar amounts. He later testified: "I was not a litigation manager. I was not determining what actions these attorneys took in this matter. They were . . . given the instruction by me to defend the Maag Trust and to protect that security interest. I did not . . . even communicate with them on a day-to-day

13

basis as to what they were doing. . . . I didn't try to be . . . a supervisor of the litigation and . . . so don't know what motions were made. I don't know what meetings were had. I don't know what discussions were had. Their billing statements would represent that, and I'm confident that those billing statements, . . . if this is . . . a crucial issue, can be produced . . . to substantiate that."

When asked how much had been paid to the law firm of HamptonHolley for attorney fees in the UD Action, Lloyd Copenbarger testified he did not know: "I pay the attorneys, and they apply them to . . . the matters that they're working on."

Lloyd Copenbarger's testimony about the attorney invoices was inadmissible as hearsay and under the secondary evidence rule. An invoice itself is hearsay, and is not admissible to prove the work or services reflected in the invoice were performed, unless a foundational showing is made of an exception to the hearsay rule. (*Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 43; *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 87; *In re Leanna W.* (2004) 120 Cal.App.4th 735, 743.) If the proper foundation is laid, invoices are admissible as business records to prove the occurrence of the act, condition, or event recorded in the business record. (Evid. Code, § 1271; *Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 320-321.) "Although a bill may evidence the rendition of the services set forth thereon [citation], in order to be competent evidence under [the business records exception to the hearsay rule], it must be supported by the testimony of a witness qualified to testify as to its identity and the mode of its preparation." (*California Steel Buildings, Inc. v. Transport Indemnity Co.* (1966) 242 Cal.App.2d 749, 759.)

The Maag Trust did nothing to lay the foundation for admitting the invoices into evidence; the Maag Trust did not even bring the invoices to trial. Lloyd Copenbarger's testimony about the invoices is therefore double hearsay.

Evidence Code section 1521, known as the "Secondary Evidence Rule," provides: "(a) The content of a writing may be proved by otherwise admissible

14

secondary evidence.  The court shall exclude secondary evidence of the content of writing if the court determines either of the following:  [¶] (1) A genuine dispute exists concerning material terms of the writing and justice requires the exclusion. [¶] (2) Admission of the secondary evidence would be unfair.  [¶] (b) Nothing in this section makes admissible oral testimony to prove the content of a writing if the testimony is inadmissible under Section 1523 (oral testimony of the content of a writing).  [¶] (c) Nothing in this section excuses compliance with Section 1401 (authentication)."

Evidence Code section 1523, subdivision (a) provides:  "Except as otherwise provided by statute, oral testimony is not admissible to prove the content of a writing."  Oral testimony is admissible to prove the content of a writing if the proponent does not have possession or control of a copy of the document and the original has been lost or destroyed, or if the proponent does not have possession or control of the original or a copy of document and neither the original nor the copy was reasonably procurable by court process or made available by other means.  (*Id.*, subds. (b) & (c)(1).)

Here, the invoices for attorney fees were not lost or destroyed.  Lloyd Copenbarger testified he had the invoices, and his attorneys would have copies of them too, but he chose not to bring the invoices with him to trial.  Thus, under Evidence Code section 1523, Lloyd Copenbarger's testimony was inadmissible to prove the content of the invoices.  The trial court should have sustained MCWE's secondary evidence rule and hearsay objections to Lloyd Copenbarger's testimony.

Lloyd Copenbarger's testimony, even if admissible, was insufficient to prove the amount of attorney fees or the nature of the work performed.  Although the trial court found Lloyd Copenbarger to be credible, the problem is not credibility:  The problem is Lloyd Copenbarger provided no relevant information of the time spent, work performed, or the hourly rates of attorneys in the UD Action.  A party seeking fees as a prevailing party must present evidence of the time spent and the hourly rate of each attorney.  (E.g., *El Escorial Owners' Assn. v. DLC Plastering, Inc.* (2007) 154

15

Cal.App.4th 1337, 1366 [prevailing parties "must prove the hours they sought were reasonable and necessary"]; *Levy v. Toyota Motor Sales, U.S.A., Inc.* (1992) 4 Cal.App.4th 807, 816 [party seeking attorney fees has the "burden of showing that the fees incurred were 'allowable,' were 'reasonably necessary to the conduct of the litigation,' and were 'reasonable in amount'"].)

Lloyd Copenbarger testified (1) he did not review the invoices, (2) did not recall participating in or supervising counsel in the UD Action, (3) did not know what his attorneys did or what legal services were performed in the UD Action, and (4) did not know which part of the fees were incurred in, and what services were performed for, the UD Action and which were for the lawsuit for breach of the Settlement Agreement. This is a wholesale failure of proof. No admissible evidence was presented of the nature of the legal work performed on behalf of the Maag Trust in the UD Action, the attorney billing rates, or of the amount of attorney fees incurred.

The trial court took judicial notice of documents filed in the UD Action from September 2012 until the UD Action was consolidated with this litigation in April 2013. MCWE argues the trial court, by doing so, committed misconduct. We do not address that argument. The documents filed in the UD Action have little materiality. "While judicial notice may be taken of court records (Evid. Code, § 452, subd. (d)), the truth of matters asserted in such documents is not subject to judicial notice." (*Board of Pilot Commissioners v. Superior Court* (2013) 218 Cal.App.4th 577, 597; see *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 193 ["'When judicial notice is taken of a document, however, the truthfulness and proper interpretation of the document are disputable'"].) The judicially noticed, court-filed documents are not relevant evidence of who prepared the documents, the amount incurred in attorney fees to prepare them, and whether that amount was reasonable.

The Maag Trust's presentation of evidence did not afford MCWE the ability to meaningfully cross-examine and challenge the reasonableness of the fees

16

incurred. "The evidence should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended." (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1320 [vague billing entries and block billing insufficient].) An award of attorney fees may be based on declarations of counsel without production of detailed time records; however, the hours spent must be substantiated. (*Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1375.)

The Maag Trust did not present any evidence to substantiate the amount of attorney fees incurred in the UD Action. The Maag Trust easily could have done so. Lloyd Copenbarger had possession of the invoices and they could have been made admissible quite easily as business records. In addition, or in the alternative, the attorneys who represented the Maag Trust in the UD Action could have testified about their hourly rates, the work performed, and the amount of time spent on various tasks. Such evidence is required when a prevailing party requests attorney fees by motion. No less is required when attorney fees are sought as damages.

The Maag Trust argues MCWE could have called as witnesses the attorneys who represented the Maag Trust in the UD Action, but chose not to do so. But the Maag Trust, not MCWE, bore the burden of proving damages. (*Richman v. Hartley, supra,* 224 Cal.App.4th at p. 1186.)

Absent actual damages, a plaintiff might recover nominal damages for breach of contract. (*Midland Pacific Building Corp. v. King* (2007) 157 Cal.App.4th 264, 275.) In any event, the Maag Trust did not plead and does not argue it was entitled to nominal damages.

Proof of damages resulting from breach are an element of a breach of contract cause of action. The Maag Trust had a full and fair opportunity to present its evidence, but that evidence was insufficient to prove the Maag Trust incurred damages. As a result, we reverse the judgment with directions to enter judgment in favor of

17

MCWE. (*Frank v. County of Los Angeles* (2007) 149 Cal.App.4th 805, 833-834 [if evidence is insufficient to support a judgment for plaintiff, a proper remedy is to reverse with directions to enter judgment for defendant].)

## III.

### The Trial Court Should Have Resolved All Claims Presented in the Breach of Contract Cause of Action.

MCWE also contends the trial court failed to completely dispose of all the claims asserted in the Maag Trust's breach of contract cause of action in that the court did not rule on the claim that MCWE failed to deliver the Plaza del Sol Note and the Plaza del Sol Deed of Trust to the Maag Trust. MCWE argues the Maag Trust conceded that claim, and, therefore, MCWE is entitled to a ruling in its favor on it.

The trial court issued a tentative statement of decision on September 14, 2016. The Maag Trust's counsel submitted a proposed statement of decision which was the same as the tentative statement of decision. In the tentative and proposed statements of decision the court found: "The Settlement Agreement did not specifically require MCWE to turn over the [Plaza del Sol] Note and Trust Deed. Rather, the Settlement Agreement required [Plaza del Sol] Real Estate Trust to 'assign the [Plaza del Sol Note] and [Plaza del Sol Deed of Trust]' to the Maag Trust. . . . However, such a requirement could be reasonably read as an implicit requirement of the Settlement Agreement. Accordingly, MCWE further breached the Settlement Agreement by failing to turn over possession of the [Plaza del Sol] Note and Trust Deed."

MCWE filed an ex parte application to clarify, add to, and/or delete from the tentative statement of decision. Among other things, MCWE asserted: "These findings were made, however, despite a Motion in Limine that was *unopposed* by Plaintiff and *granted* by this Court specifically excluding 'evidence, argument, or reference to a "breach" of the Settlement Agreement by MCWE for its failure to turn over the original [Plaza del Sol Note] and [Deed of Trust].' Thus, MCWE asserts that

18

any reference to a 'breach' by MCWE for failing to turn over the [Plaza del Sol] Note and [Plaza del Sol] Deed of Trust should be deleted from the Statement of Decision since it should not have been and could not have been raised in the first place due to the Court's earlier ruling."

In response, the Maag Trust conceded: "The Maag Trust's pleadings in this action alleged multiple breaches of the Settlement Agreement. Prior to trial, Defendants filed a Motion in Limine No. 7 seeking an order to preclude evidence or argument that they breached the Settlement Agreement by failing to give the Maag Trust possession of the promissory note originally provided by [NHOM] to . . . Plaza Del Sol . . . and the related Deed of Trust. In their Motion in Limine No. 7, Defendants acknowledged assigning the Note and Deed of Trust to the Maag Trust, and argued that any failure to turn over possession was not a breach of the Settlement Agreement. The Maag Trust chose not to oppose Defendants' Motion in Limine No. 7, and the Court granted the motion. Accordingly, the Maag Trust did not present evidence or argument at trial that MCWE breached the Settlement Agreement by failing to turn over possession of the Note and Deed of Trust."

In response to MCWE's objections and the Maag Trust's response, the trial court changed the tentative statement of decision. The final statement of decision includes this finding: "Because the Settlement Agreement was materially breached by MCWE's failure to promptly dismiss with prejudice the UD [Action], the Court need not decide whether [the] Maag Trust suffered damages as a direct and proximate result of MCWE's alleged failure of not turning over possession of the [Plaza del Sol] Note and Trust Deed."

The trial court's decision not to decide the issue of delivery of the Plaza del Sol Note and the Plaza del Sol Deed of Trust was expressly based on the court's decision that MCWE breached the Settlement Agreement by failing to timely dismiss the UD Action. However, both claims (failure to deliver the note and failure to dismiss the UD

19

Action) were pleaded in the complaint and they appear to be independent of each other. The Maag Trust conceded it presented no evidence or argument at trial that MCWE breached the Settlement Agreement by failing to turn over possession of the Plaza del Sol Note and the Plaza del Sol Deed of Trust. MCWE therefore was entitled to a ruling in its favor on that claim.

It is unnecessary to remand for the trial court to make new findings or revise the statement of decision for two reasons. First, we are reversing the judgment with directions to enter judgment in MCWE's favor, and that judgment is a final resolution in MCWE's favor of all claims presented in the breach of contract cause of action. Second, this opinion becomes law of the case in further proceedings in this matter.

## DISPOSITION

The judgment in favor of the Maag Trust and against MCWE on the Maag Trust's complaint is reversed. The matter is remanded with directions to enter judgment in favor of MCWE and against the Maag Trust on the Maag Trust's complaint. MCWE shall recover its costs on appeal.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.

20

Filed 11/13/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LLOYD COPENBARGER, as Trustee, etc.,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>MORRIS CERULLO WORLD EVANGELISM, INC.<br><br>    Defendant and Appellant. | G054731<br><br>(Super. Ct. No. 30-2012-00605730-CU-BC-CJC)<br><br>O R D E R |

Defendant and Appellate Morris Cerullo World Evangelism, Inc. has requested that our opinion, filed on October 19, 2018, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c)(3), (4), (5), and (6). The request is GRANTED. The opinion is ordered published in the Official Reports.

FYBEL, J.

WE CONCUR:

O'LEARY, P. J.

BEDSWORTH, J.