Filed 6/13/22; Modified and Certified for Publication 6/29/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re M.B., a Person Coming Under the Juvenile Court Law. | B312789 |
| | (Los Angeles County Super. Ct. No. 18CCJP03577A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LIAH B.,<br><br>Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Debra R. Archuleta, Judge. Affirmed in part, reversed in part and remanded with directions.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Jane E. Kwon, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Liah B., the mother of six-year-old M.B., appeals the August 31, 2021 order terminating her parental rights, contending the Los Angeles County Department of Children and Family Services failed to adequately investigate her claim of Indian ancestry through interviews with maternal relatives and the notices sent to the Blackfeet Tribe failed to include the birthdates of M.B.'s maternal grandfather and great-grandfather as required by federal regulations implementing the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California law.[1]

Without challenging Liah's claims of error, the Department argues that Liah's appeal of the adequacy of its investigation has been mooted by further interviews with maternal relatives and that any omission of required information from the ICWA-030 notices sent to the Blackfeet Tribe was harmless because its post-

---

[1] Liah separately appealed a May 13, 2021 order summarily denying her petition pursuant to Welfare and Institutions Code section 388 to reinstate family reunification services or return M.B. to her care. We granted Liah's motion to consolidate the two appeals. Liah's briefs in this court, however, present no arguments directed to the section 388 order, and we deem that aspect of her appeal abandoned. (See *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99; Cal. Rules of Court, rule 8.204(a)(1)(B).)

appeal investigation established ICWA notices were not required. In support of its mootness/harmless error arguments the Department has moved for "judicial notice of post-judgment evidence"—a last minute information report filed in the juvenile court on April 4, 2022.

As did our colleagues in Division Three of the Fourth Appellate District in *In re K.M.* (2015) 242 Cal.App.4th 450 (*K.M.*), which involved a similar effort by the child protective services agency to remedy its deficient ICWA investigation while an order terminating parental rights was on appeal, we reject the argument that evidence of postjudgment ICWA inquiries moots the issue, conditionally reverse the order terminating Liah's parental rights and remand the matter for full compliance with the inquiry and notice provisions of ICWA and related California law.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Dependency Proceedings*

The events leading to the Department's filing of a dependency petition, M.B.'s removal from Liah after the juvenile court sustained a single count pursuant to Welfare and Institutions Code section 300, subdivision (b)(1),[2] concerning Liah's substance abuse, and the dependency proceedings through the juvenile court's November 7, 2019 order summarily denying Liah's petition for modification of its March 6, 2019 order terminating reunification services are detailed in our opinion affirming the November 7, 2019 order. (*In re M.B.* (Mar. 15, 2021, B302837) [nonpub. opn.].)

---

[2] Statutory references are to this code unless otherwise stated.

3

The section 366.26 selection and implementation hearing, originally scheduled for July 3, 2019, was ultimately held on August 31, 2021.  At the hearing the juvenile court found by clear and convincing evidence M.B. was adoptable and found no exception to termination of parental rights applied, specifically rejecting Liah's argument based on the parent-child-relationship exception.  (§ 366.26, subd. (c)(1)(B)(i).)[3]  The court terminated Liah's parental rights and transferred care, custody and control of M.B. to the Department for adoptive planning and placement.  Shenika B., a maternal great-aunt living in New Jersey, was identified by the Department as M.B.'s prospective adoptive parent.[4]

2. *The ICWA Investigation and Notice*

In the Indian Child Inquiry Attachment (ICWA-010(A)) filed June 5, 2018 with the original dependency petition, the Department's social worker checked the box stating, "The child may have Indian ancestry," and explained, "Mother stated child has Indian ancestry."  The detention report filed on the same date similarly stated, "The Indian Child Welfare Act does or may apply," and elaborated, "On 6/1/2018, mother, Liah B[.] stated that American Indian heritage does apply as to the paternal side

---

[3]   The court found Liah had not maintained regular visitation and had not established a bond with M.B.

[4]   In its section 366.26 report the Department explained New Jersey, where the maternal great-aunt lives, requires an order terminating parental rights before it will complete an adoption home study pursuant to a referral under the Interstate Compact for the Placement of Children.  The court ordered M.B. placed with Shenika B. on December 17, 2021.

of father, Terrell W[.]," identified by Liah as M.B.'s biological father.[5]

On June 6, 2018, in connection with the detention hearing, in her Parental Notification of Indian Status (ICWA-020) Liah checked the box indicating she may have Indian ancestry, writing "Blackfoot (MGGF Lonnie B[.])."  Asked by the court at the hearing about M.B.'s Indian ancestry, Liah responded, "[Terrell] did tell me he was Indian.  I'm not exactly sure what tribe, but I know on my dad's side, my grandfather is definitely Indian."  Liah explained she was estranged from her father's side of the family and did not have contact information for Lonnie B., Sr., M.B.'s great-grandfather, and, while she knew he was born in Camden, New Jersey, she did not know his date of birth.  She told the court she would try to obtain that information.  The court found there was no reason to know ICWA applied to Terrell but ordered the Department to investigate Liah's Indian ancestry and provide a supplemental report regarding the investigation to the court that included "the details of who was interviewed, dates and places of birth of the relatives as far back as can be ascertained."  In addition, the court ordered the Department to provide notice to the appropriate tribes and to the Bureau of Indian Affairs.

In its jurisdiction/disposition report filed July 5, 2018, the Department summarized its social worker's interview with Liah

_____

[5]     The whereabouts of Terrell, subsequently designated as M.B.'s alleged father by the court, remained unknown throughout the proceedings.  Liah said Terrell never had any contact with M.B.  On April 12, 2019 the court found the Department's due diligence search had been completed and authorized notice of the section 366.26 hearing be provided to Terrell by publication.

concerning her possible Indian ancestry. Liah provided the names and dates and places of birth, if known, of various maternal relatives. As to Lonnie B., Sr., Liah again said he was born in Camden, and Liah did not know his date of birth; she did not know if he was still living. Liah provided the same information as to Lonnie B., Jr., M.B.'s maternal grandfather—he was born in Camden on an unknown date, and she did not know if he was still alive. The Department reported it had recently sent ICWA notices to Blackfeet tribal bands, the Bureau of Indian Affairs and the Secretary of the Interior. The report does not indicate any further investigation had been conducted by the Department.

At the jurisdiction hearing on July 19, 2018 the Department reported it had sent ICWA notices and suggested the court set a progress hearing to evaluate any responses that might be received. The court scheduled a nonappearance progress hearing for September 7, 2018.

A last minute information for the court, filed September 5, 2018, the Department reported it had no confirmation its notices to the Bureau of Indian Affairs and the Secretary of the Interior had been received and no response to the notices. A representative of the Blackfeet Tribe of Montana confirmed the Department had used the correct mailing address, but the Department had been unable to reach the Tribe's ICWA division. The court granted the Department's request to continue the progress hearing to December 6, 2018.

A December 4, 2018 last minute information explained the Department had resubmitted a notice to the Blackfeet Tribe of Montana but its efforts, via voicemail, to obtain a letter of ICWA eligibility/noneligibility had been unsuccessful. On December 6,

2018 the juvenile court, after noting 60 days had elapsed since notices had been sent and no responses had been received, found it had no reason to know ICWA applied to the case.

In her appeal from the juvenile court's November 7, 2019 order denying her section 388 petition, Liah argued the Department and the juvenile court had not complied with their duties of inquiry and notice under ICWA before the court made its no-ICWA finding in December 2018. On October 29, 2020, while that appeal was pending, the juvenile court directed the Department to conduct further inquiry regarding Liah's possible Blackfeet ancestry and to send all appropriate ICWA notices prior to the next hearing, which was then scheduled for January 4, 2021. Liah conceded, and we agreed, the order for additional investigation mooted the ICWA issue at that time. (See *In re M.B.*, *supra*, B302837, fn. 1.)

In a supplemental report filed December 29, 2020 the Department advised the court it had interviewed Lonnie B., Sr., who denied any Indian ancestry, including with the Blackfeet Tribe, and said Lonnie B., Jr. was not a registered member of the Blackfeet Tribe. He declined to provide the name of Lonnie B., Jr.'s mother (M.B.'s maternal great-grandmother).[6] Lonnie B., Sr. said he had no contact with Lorrie H., M.B.'s maternal grandmother. A maternal aunt, Tiarra H., who had received a Department contact letter, responded by email that she had no knowledge of any Indian ancestry in the family. The Department's efforts to interview Lonnie B., Jr., whose whereabouts were unknown, and Lorrie H. were unsuccessful.

---

[6]     Lonnie B., Sr.'s current wife is Lonnie B., Jr.'s stepmother.

7

The Department sent new notices to the Blackfeet Tribe of Montana, the Bureau of Indian Affairs and the Secretary of the Interior. The notices did not include birthdates for Lonnie B., Sr. or Lonnie B., Jr., which Lonnie B., Sr. had declined to provide. In a letter dated January 28, 2021 the Blackfeet Tribe of Montana responded to the notice, stating M.B. was not listed on the tribal rolls and was not eligible for enrollment in the tribe. After receiving that letter, the court at a May 4, 2021 hearing found it had no reason to know M.B. was an Indian child as defined under ICWA, a finding repeated in the Department's report for the selection and implementation hearing that was finally conducted on August 31, 2021.

3. *The Department's Post-appeal Remedial Efforts and Motion for Judicial Notice*

In Liah's opening brief on appeal, filed February 16, 2022, she explained the Department had failed to seek critical information (including Lonnie B., Sr.'s and Lonnie B., Jr.'s dates of birth) from accessible maternal relatives, among them M.B.'s prospective adoptive parent, Shenika B., Lonnie B., Jr.'s sister. Liah argued the Department's violation of its ICWA duty of inquiry required a conditional reversal of the August 31, 2021 order terminating parental rights, with a remand directing the Department to comply with the inquiry and notice requirements of ICWA and related California law.

As reflected in an April 4, 2022 last minute information report for the court, during the last 10 days of March 2022, in response to Liah's appellate brief, the Department reinterviewed Lonnie B., Sr., interviewed Shenika B. and unsuccessfully attempted to contact several other maternal relatives, including

M.B.'s maternal grandmother. The report also indicated Lonnie B., Jr. had died in 2020.

On April 7, 2022, concurrently with the filing of its respondent's brief, the Department moved, pursuant to California Rules of Court, rule 8.252 and Evidence Code sections 452 and 459, for judicial notice of the April 4, 2022 last minute information for the court. The Department explained the report "demonstrates that DCFS interviewed or attempted to interview available maternal relatives while the appeal was pending" and thus supported the argument advanced in its respondent's brief that Liah's appeal was moot. Liah filed an opposition memorandum, objecting to judicial notice of the report.

## DISCUSSION

1. *ICWA and the Duties of Inquiry and Notice*

ICWA and governing federal regulations (25 C.F.R. § 23.101 et seq. (2022)) set minimal procedural protections for state courts to follow before removing Indian children and placing them in foster care or adoptive homes. (*In re Y.W.* (2021) 70 Cal.App.5th 542, 551.) The statute authorizes states to provide "'a higher standard of protection'" to Indian children, their families and their tribes than the rights provided under ICWA. (*In re T.G.* (2020) 58 Cal.App.5th 275, 287-288; see 25 U.S.C. § 1921.) In addition to significantly limiting state court actions concerning out-of-family placements for Indian children (see *In re T.G.*, at pp. 287-288), ICWA permits an Indian child's tribe to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding (see 25 U.S.C. § 1911(c); *In re Isaiah W.* (2016) 1 Cal.5th 1, 8).

To ensure Indian tribes may exercise their rights in dependency proceedings as guaranteed by ICWA and related

state law, investigation of a family member's belief a child may have Indian ancestry must be undertaken and notice provided to the appropriate tribes. (§ 224.2, subd. (a) [imposing on the court and child protective services agencies "an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child"]; see *In re Charles W.* (2021) 66 Cal.App.5th 483, 489.) The duty to inquire "begins with initial contact (§ 224.2, subd. (a)) and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child." (*In re T.G.*, *supra*, 58 Cal.App.5th at p. 290; accord, *In re Antonio R.* (2022) 76 Cal.App.5th 421, 429; see § 224.2, subds. (a)-(c).)

In addition, section 224.2, subdivision (e), imposes a duty of further inquiry regarding the possible Indian status of the child "[i]f the court, social worker, or probation officer has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine there is reason to know that the child is an Indian child." California Rules of Court, rule 5.481(a)(4) provides that further inquiry must be conducted if the social worker "knows or has reason to know or believe that an Indian child is or may be involved." Further inquiry includes, "but is not limited to," interviewing, as soon as practicable, extended family members, contacting the Bureau of Indian Affairs and contacting "the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e)(2).)

If those inquiries result in reason to know the child is an Indian child, notice to the relevant tribes is required. (25 U.S.C. § 1912(a); Welf. & Inst. Code, § 224.3; see *In re J.S.* (2021)

10

62 Cal.App.5th 678, 686; *In re T.G.*, *supra*, 58 Cal.App.5th at p. 290.)  The governing federal regulations require ICWA notices to include, if known, the names, birthdates, birthplaces and tribal enrollment information of all direct lineal ancestors of the child. (25 C.F.R. § 23.111(d)(3) (2022).)  State law mandates inclusion of "[a]ll names known of the Indian child's biological parents, grandparents, and great-grandparents, or Indian custodians, including maiden, married, and former names or aliases, as well as their current and former addresses, birth dates, places of birth and death, tribal enrollment information of other direct lineal ancestors of the child, and any other identifying information, if known."  (§ 224.3, subd. (a)(5)(C); see *In re A.M.* (2020) 47 Cal.App.5th 303, 317 ["'If the notice duty is triggered under ICWA, the notice to a tribe must include a wide range of information about relatives, including grandparents and great-grandparents, to enable the tribe to properly identify the children's Indian ancestry.  [Citation.]  Any violation of this policy requires the appellate court to vacate the offending order and remand the matter for further proceedings consistent with ICWA requirements'"].)

> 2. *The April 4, 2022 Last Minute Information Does Not Moot Liah's Appeal*

The Department's effort to moot Liah's appeal by conducting further interviews while her appeal was pending fails for several reasons, separate from the general rule cited by Liah in her opposition to the motion for judicial notice, that "'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.'"  (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.)  First, "'while courts are free to take judicial notice of the

11

*existence* of each document in a court file, including the truth of results reached, they may not take judicial notice of the truth of hearsay statements in decisions and court files.'" (*In re Vicks* (2013) 56 Cal.4th 274, 314; accord, *Copenbarger v. Morris Cerullo World Evangelism, Inc.* (2018) 29 Cal.App.5th 1, 14-15 ["'[w]hile judicial notice may be taken of court records [citation], the truth of matters asserted in such documents is not subject to judicial notice'"]; see *K.M.*, *supra*, 242 Cal.App.4th at p. 456.)  Thus, while we grant the Department's motion for judicial notice and acknowledge the existence of the last minute information, the contents of that report—the substance of the postjudgment interviews conducted by the Department and its description of unsuccessful efforts to reach other maternal family members— are not properly before us in this appeal.

Code of Civil Procedure section 909, unlike a motion for judicial notice, permits an appellate court to take additional evidence and make independent factual findings on appeal.[7] Such postjudgment evidence may, in appropriate cases, be considered to determine whether an issue on appeal is moot. (See *In re Josiah Z.* (2005) 36 Cal.4th 664, 676 ["the beneficial consequences of motions to dismiss, where granted, will be to 'expedit[e] the proceedings and promot[e] the finality of the juvenile's court's orders and judgment' [citation]—precisely the

---

[7]     Code of Civil Procedure section 909 provides, "In all cases where trial by jury is not a matter of right . . . the reviewing court may make factual determinations contrary to or in addition to those made by the trial court. . . .  The reviewing court may for the purpose of making the factual determinations or for any other purpose in the interests of justice, take additional evidence of or concerning facts occurring at any time prior to the decision of the appeal."

policy advanced by our ruling in *Zeth S.*"].)  Deeming the Department's motion for judicial notice a motion to consider new evidence under Code of Civil Procedure section 909, however, would not solve the fundamental problem with the argument the postjudgment interviews moot Liah's appeal.

As discussed, after the juvenile court's initial finding it had no reason to know ICWA applied, while Liah's prior appeal was pending, the court ordered the Department to investigate further and resend notice to the Blackfeet Tribe.  Following the Blackfeet Tribe's response, as a predicate for the section 366.26 order terminating parental rights, the court again found ICWA did not apply to M.B.  It is that order—and the inquiry and notice on which the necessary no-ICWA finding is grounded—that is at issue in this appeal and that the Department was attempting to reinforce through its additional ICWA interviews.  Yet section 366.26, subdivision (i)(1),[8] expressly deprives the juvenile court of jurisdiction to modify or revoke an order terminating parental rights once it is final as to that court.  Accordingly, as the court of appeal explained in *K.M.*, *supra*, 242 Cal.App.4th 450, a child protective services agency cannot remedy a defective ICWA investigation by conducting further interviews while the termination order is being reviewed on appeal.  (*K.M.*, at pp. 457-458.)

---

[8]     Section 366.26, subdivision (i)(1), with a limited exception not applicable in this case, provides, "Any order of the court permanently terminating parental rights under this section shall be conclusive and binding . . . .  After making the order, the juvenile court shall have no power to set aside, change, or modify it."

The mother in *K.M.* had informed the juvenile court at her first court appearance that she may have Indian ancestry. Although the juvenile court ordered the Orange County Social Services Agency (SSA) to investigate, the agency failed to conduct any interviews, while asserting in its reports to the court that ICWA did not apply. (*K.M.*, *supra*, 242 Cal.App.4th at p. 453.) Both parents appealed after the court terminated their parental rights, raising the issue of ICWA violations in their opening briefs. (*Ibid.*)

Concurrently with its respondent's brief, SSA filed a motion to augment the record, to take additional evidence and to dismiss the appeal as moot. The motion papers included documentation relating to SSA's renewed efforts regarding ICWA inquiry and notice and a further minute order from the juvenile court with an additional finding that ICWA did not apply. (*K.M.*, *supra*, 242 Cal.App.4th at pp. 453-454.)

The court of appeal granted the motion to take additional evidence, but held the evidence did not render the appeal moot "because the juvenile court lacked jurisdiction to rule on any collateral dispute of the termination order." (*K.M.*, *supra*, 242 Cal.App.4th at p. 457.) After quoting section 366.26, subdivision (i)(1), the court explained, "[T]he juvenile court lacked jurisdiction to consider SSA's belated remedial ICWA efforts because it was in substance a collateral attack on the termination order. Compliance with the ICWA is required before terminating parental rights. [Citation.] Moreover, if the new evidence revealed K.M. was an Indian child, as defined by the ICWA, the juvenile court would have been required to invalidate prior orders taken in violation of the ICWA, i.e., reverse the termination of parental rights. [Citation.] Section 366.26,

subdivision (i), clearly states juvenile courts lack jurisdiction to modify or revoke an order terminating parental rights." (*K.M.*, at p. 458.) "SSA's new evidence and the juvenile court's postjudgment order," the *K.M.* court concluded, "have no relevance to the subject of this appeal, i.e. review of the termination order." (*Id.* at p. 459.) Rather, once SSA's ICWA errors had been pointed out in the parents' opening briefs, the court wrote, the most expeditious and efficient way to have solved the problem would have been for the parties to stipulate to a limited reversal and an expedited remittitur. (*Id.* at p. 458.)

Other than the Department's attempt to use a motion for judicial notice rather than a motion to take evidence pursuant to Code of Civil Procedure section 909 to present its postjudgment ICWA efforts as grounds for dismissing the appeal as moot, the case at bar differs from *K.M.* only because the Department, unlike SSA, did not ask the juvenile court to review the last minute information and determine whether "proper and adequate further inquiry and due diligence" had been conducted, as required by section 224.2, subdivision (i)(2), for a finding that ICWA does not apply. (See *In re Y.W.*, *supra*, 70 Cal.App.5th at p. 552; see also *In re K.R.* (2018) 20 Cal.App.5th 701, 709 ["the court has a responsibility to ascertain that the agency has conducted an adequate investigation and cannot simply sign off on the notices as legally adequate without doing so"].) Omitting that statutory step does not justify a different outcome. The purpose of the Department's further interviews of M.B.'s maternal relatives, like the additional efforts in *K.M.*, was to correct errors in the earlier ICWA investigation. If information had been developed that required new notices be sent to the Blackfeet Tribe or the Bureau of Indian Affairs—for example,

because the Department learned the birthdates of Lonnie B., Sr., whom Liah had identified as "definitely Indian," or the maternal grandfather, Lonnie B., Jr.—the juvenile court would have confronted the same dilemma identified by the *K.M.* court: An order made in violation of ICWA would be invalid; yet, by virtue of section 366.26, subdivision (i)(1), the juvenile court lacked jurisdiction to vacate its order terminating parental rights in order to permit ICWA compliance.

Rather than attempt to moot Liah's appeal by belatedly conducting the investigation required by section 224.2, the Department's proper course of action was to stipulate to a conditional reversal with directions for full compliance with the inquiry and notice provisions of ICWA and related California law—a procedure the Department has used in many ICWA appeals pending before us.

3. *The Department Failed To Conduct an Adequate Inquiry into M.B.'s Possible Indian Ancestry*

As the Department implicitly conceded by conducting additional interviews with several of M.B.'s maternal relatives after Liah filed her opening brief on appeal and by arguing in its respondent's brief only that those further interviews mooted Liah's ICWA claims, rather than contending its inquiries before the section 366.26 hearing satisfied its obligations under ICWA and California law, the Department failed to conduct an adequate inquiry into M.B.'s possible Indian ancestry before the court terminated Liah's parental rights. In particular, as Liah argued, the Department failed to contact M.B.'s maternal grandmother, did not determine whether the maternal grandfather was available for an interview and did not ask ICWA-related questions of the maternal great-aunt (the maternal grandfather's

16

sister) who had been identified as M.B.'s prospective adoptive parent. Although notices were sent to the Blackfeet Tribe of Montana, the Bureau of Indian Affairs and the Secretary of the Interior, as ordered by the juvenile court, those notices were missing required information, including Lonnie B., Sr.'s birthdate—information that may well have been available from accessible maternal relatives (including Lonnie B., Sr.'s daughter Shenika), even if Lonnie B., Sr. declined to provide it.

For its part, the juvenile court failed to ensure the Department adequately investigated M.B.'s Indian ancestry, passively accepting the Department's reports as fulfilling its statutory obligations without questioning the extent of the interviews conducted or the nature of the follow-up, if any, pursued by Department personnel. Far more is required. (See, e.g., *In re T.G., supra,* 58 Cal.App.5th at p. 293 ["[t]he court here fulfilled its initial obligation to ask about Tamara's possible Indian ancestry; it failed, however, to ensure the Department complied with its duty of further inquiry based on the responses the court had received from Tamara and Loretta S."]; *In re N.G.* (2018) 27 Cal.App.5th 474, 482.)

17

## DISPOSITION

The May 13, 2021 order denying Liah's section 388 petition is affirmed.  The August 31, 2021 section 366.26 order terminating Liah's parental rights is conditionally affirmed.  The matter is remanded to the juvenile court for full compliance with the inquiry and notice provisions of ICWA and related California law and for further proceedings not inconsistent with this opinion.


                                       PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.

Filed 6/29/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re M.B., a Person Coming Under the Juvenile Court Law. | B312789 |
| | (Los Angeles County Super. Ct. No. 18CCJP03577A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION (NO CHANGE IN APPELLATE JUDGMENT) |
| v. | |
| LIAH B., | |
| Defendant and Appellant. | |

THE COURT:

The request for modification, filed by plaintiff and respondent, is granted in part. It is ordered that the opinion filed herein on June 13, 2022 be modified as follows:

1. On page 1, "Affirmed in part, reversed in part and remanded with directions" is deleted and the following is inserted in its place:

> Affirmed in part, conditionally affirmed in part and remanded with directions.

2.  On page 3, in the first full paragraph, a period and the word "We" is inserted after the word "issue," and the word "reverse" is changed to "affirm," so the paragraph reads:

> As did our colleagues in Division Three of the Fourth Appellate District in *In re K.M.* (2015) 242 Cal.App.4th 450 (*K.M.*), which involved a similar effort by the child protective services agency to remedy its deficient ICWA investigation while an order terminating parental rights was on appeal, we reject the argument that evidence of postjudgment ICWA inquiries moots the issue.  We conditionally affirm the order terminating Liah's parental rights and remand the matter for full compliance with the inquiry and notice provisions of ICWA and related California law.

3.  On page 13, at the end of the full paragraph "(*K.M.*, *supra*, at pp. 457-458.)" is deleted and following is inserted in its place:

> (*K.M.*, *supra*, at pp. 457-458; contra, *In re Allison B.* (2022) 79 Cal.App.5th 214 [finding appeal from order terminating parental rights moot based on postappeal evidence that agency had belatedly made the required ICWA inquiries].)

The opinion in this case filed June 13, 2022 was not certified for publication.  It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request by appellant's counsel pursuant to California Rules of Court, rule 8.1120(a) for publication is granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

2

There is no change in the appellate judgment.

_____
PERLUSS, P. J.        SEGAL, J.        FEUER, J.